[No. B190062. Second Dist., Div. Two. May 4, 2007.]

WILLIAM DePALMA, Plaintiff and Appellant, v.
SONIA RODRIGUEZ, Defendant and Respondent.

COUNSEL

O'Neill & Marchiondo and Philip L. Marchiondo for Plaintiff and Appellant.

Michael Maguire & Associates, Paul Kevin Wood and Kevin R. Jolly for Defendant and Respondent.

OPINION

BOREN, P. J.—Plaintiff William DePalma sued defendant Sonia Rodriguez for personal injuries allegedly arising from a motor vehicle accident. The jury's special verdict found that defendant was negligent, but that her negligence was not a substantial factor in causing any harm to plaintiff. Plaintiff contends he is entitled to a new trial because the court abused its discretion in allowing defendant's biomechanic expert to testify at trial to opinions beyond those he had testified to at his deposition.

The general substance of the expert witness's opinion testimony at his deposition was that the nature of the low-speed accident was such that one would not expect a person of normal health to have suffered "any" injury

from the accident in question. Thus, we find that the expert did not exceed the scope of his deposition testimony when he opined at trial that one would not expect the accident to result in the specific knee and shoulder injuries complained of because the "forces are very comparable" to what would be experienced during normal "routine activities," and there was also "no expectation of knee contact." In any event, it is not reasonably probable that a more favorable result would have ensued; the alleged error was not prejudicial.

## FACTS

On January 6, 2003, plaintiff's vehicle was the front car in a three-car, chain-reaction, rear-end collision. The middle car was driven by Teresa Avina (who settled with defendant prior to trial), and the last car was driven by defendant.

The factual disputes at trial focused on the severity of the vehicle impacts and whether Avina's vehicle collided with plaintiff's before or after defendant's vehicle collided with Avina's. Defendant testified that her Toyota came into contact with the rear of Avina's car only once. However, Avina, whose deposition testimony was read into the record, indicated that her vehicle was hit from the rear two times by defendant's vehicle. Avina also explained that "[n]othing happened to [her] vehicle" except "a little scratch" on the back of the rear portion.

Plaintiff presented medical testimony regarding injury to his left knee and left shoulder. Dr. Jacob Tauber, an orthopedic surgeon, conducted an independent medical examination of plaintiff and reviewed plaintiff's medical records. Dr. Tauber indicated that plaintiff had degenerative arthritis in his left knee and impingement syndrome with acromioclavicular arthritis in his left shoulder. Plaintiff was a candidate for left knee replacement surgery and for decompression surgery on his left shoulder.

Dr. Gerald Swanson, plaintiff's treating physician, also testified that plaintiff had left shoulder impingement syndrome, meaning a problem with the rotator cuff mechanism. Regarding plaintiff's left knee, the medial compartment had collapsed and there was no articular cartilage left. There were also other changes "of a degenerative nature" in other areas of his knee. Plaintiff was a surgical candidate for a left knee replacement and for shoulder surgery.

According to Dr. Swanson, the vehicle accident in question resulted in only an "incremental" increase in plaintiff's symptoms and loss of function, and it "wasn't the sole cause of the underlying process which is degenerative joint disease." Dr. Swanson deemed plaintiff not able to return to his previous occupation working on elevators.

Defendant presented testimony at trial from Dr. Peter Burkhard, a biomechanic expert and accident reconstructionist, who was previously employed by General Motors Research Laboratories in the crash injury group at their biomedical science department and by TRW in the area of structural dynamics. Dr. Burkhard analyzed the vehicle accident at issue under two scenarios: first, where defendant's vehicle struck Avina's vehicle first and pushed Avina's vehicle into plaintiff's vehicle; and second, where Avina's vehicle struck plaintiff's vehicle, and then defendant's vehicle struck Avina's, pushing it into plaintiff's vehicle a second time.

According to Dr. Burkhard, even under the second scenario with a double impact and greater force, based upon the damage suffered by the vehicles the maximum impact sustained by plaintiff's stopped vehicle would have been a three- to five-mile-per-hour crash impact. A three-mile-per-hour impact is similar to a car stopping in a parking lot where the tires accidentally hit a raised parking curb. A five-mile-per-hour impact is similar to amusement park bumper cars hitting each other. Dr. Burkhard further testified that the damage to the front of Avina's vehicle appeared to be an "under ride," meaning that Avina's bumper slid underneath plaintiff's bumper because Avina was braking at the time.

Counsel for defendant then asked Dr. Burkhard if, based on his professional experience and the information available to him, he believed "there would be any reasonable expectation [of injury] to [plaintiff's] left knee." Counsel for plaintiff objected on the ground that such a question called for an answer "that's beyond the opinion expressed in his deposition." The court overruled the objection, and Dr. Burkhard replied, "With regards to the knee, I find really no potential for injury in this particular case." He explained that there was "no expectation of knee contact" because the body would be moving away from the dashboard, "and then on rebound there's a very minimal movement forward, particularly of the pelvis or the lower extremities. . . . The forces are very comparable to what you would experience just in everyday life. That's the level of force [plaintiff] would have experienced

here." Again over the objection of plaintiff's counsel, the court permitted Dr. Burkhard to testify similarly that as to plaintiff's left shoulder, "The same answer would also be true. You are looking at forces that are very comparable to that experienced in performing everyday routine activities or events."

Thereafter, counsel for plaintiff cross-examined Dr. Burkhard regarding alleged inconsistencies between his trial and deposition testimony as to whether or not the accident could have caused certain injuries to plaintiff. Dr. Burkhard explained, "What I think I said in my deposition is that the forces in this particular case are commensurate or are similar to the forces experienced during the performance or experience of everyday life, and then the obvious implication would be that, if you don't expect this person to be injured doing everyday things, then you wouldn't expect injury here."[1]

In an effort to undermine plaintiff's credibility, counsel for defendant established the fact of several prior injuries suffered by plaintiff. In November of 2002, three months prior to the vehicle accident at issue, plaintiff explained that when he picked up a large sheet of plywood in his garage "my left rib popped, and I felt a twinge in my left shoulder." Plaintiff also admitted that in 1995 he fell down a paved hill, injuring his neck, back and shoulder, resulting in medical treatment and a workers' compensation claim. In the mid-1980's, plaintiff had another workers' compensation claim after a compactor fell on him, resulting in injury to his back. Counsel for defendant

---

[1] Dr. Burkhard's deposition was, in pertinent part, as follows: "If [plaintiff is] able to do everyday type[s] of things relatively pain-free, then I would expect this accident to have posed no more threat than those everyday types of things. . . . If everyday types of activities cause him pain, then I would see this accident causing him some pain. . . . [¶] . . . If he's robustly healthy [meaning he] is able to do everyday types of things and is relatively active and doesn't have pain associated with that, this accident poses no more threat than those types of situation[s]."

In response to a question by plaintiff's counsel as to whether in his opinion plaintiff "sustain[ed] *any* injury in this accident," (italics added) Dr. Burkhard explained, "Not having read his depo or the medical records, the only way I can answer is this: if [plaintiff] is shown to be robustly healthy, relatively active prior to this accident, this accident poses no more threat [than doing everyday types of things around the house], and I would not have expected injury to him. [¶] If you tell me or the facts tell me that he had some . . . problems with his back or neck prior to this[,] doing everyday types of things around the house, [those normal] activities caused him pain, could this accident have caused him some additional pain? The answer is yes."

During his deposition, Dr. Burkhard also indicated he was unfamiliar with plaintiff's complaints of physical injuries, other than complaints of neck and back pain noted in the police report, and he eschewed any discussion of causation regarding pain in the knees and shoulders. At the conclusion of his deposition, Dr. Burkhard acknowledged that he had no more opinions to state other than those already stated.

also established that despite the prior injuries noted above, on health care provider forms plaintiff indicated that he had no prior injuries.

Regarding the extent of the damage to the vehicles involved in the accident, Avina testified during her deposition that her car suffered "just a little scratch" on the back rear portion. Estimates for repair of plaintiff's vehicle varied from approximately $1,300 to $3,100; the estimate for the repair of defendant's vehicle was approximately $4,200.

## DISCUSSION

Plaintiff contends that the trial court abused its discretion by allowing defendant's biomechanic expert, Dr. Burkhard, to offer opinions at trial beyond the scope of the opinions he offered in his deposition testimony. Plaintiff asserts that in reliance on Dr. Burkhard's deposition testimony, and particularly his lack of any opinion regarding plaintiff's left knee and left shoulder injuries (the most significant injuries alleged), plaintiff found it unnecessary to have his own biomechanic expert testify and thus elected to undesignate him as an expert witness at trial. According to plaintiff, over his objections at trial Dr. Burkhard was permitted to express his previously concealed opinions regarding plaintiff's left knee and left shoulder, and plaintiff was "sandbagged" into not calling his own biomechanic expert at trial.

However, we find no abuse of the trial court's " 'broad discretion in ruling on the admissibility of evidence.' " (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431–1432 [77 Cal.Rptr.2d 574].) And the cases relied upon by plaintiff, *Jones v. Moore* (2000) 80 Cal.App.4th 557 [95 Cal.Rptr.2d 216] (*Jones*), and *Bonds v. Roy* (1999) 20 Cal.4th 140 [83 Cal.Rptr.2d 289, 973 P.2d 66] (*Bonds*), are factually distinguishable.

It is well settled that an expert may be precluded from testifying at trial on a subject that was not described in his expert witness declaration. (*Bonds*, *supra*, 20 Cal.4th at p. 145.) The Supreme Court in *Bonds* held that "the exclusion sanction of [Code of Civil Procedure section 2034,] subdivision (j) applies when a party unreasonably fails to submit an expert witness declaration that fully complies with the content requirements of [Code of Civil Procedure section 2034,] subdivision (f)(2), including the requirement that the declaration contain '[a] brief narrative statement of the general substance of

the testimony that the expert is expected to give.' "[2] (*Bonds*, at pp. 148–149.) This ensures that the opposing party has an opportunity to gather sufficient evidence for cross-examination and rebuttal. (*Id.* at pp. 146–147.) The decision in *Bonds*, however, has no direct bearing here because there is no issue concerning the scope of the *declaration* by an expert witness. Rather, the issue in the present case concerns the expert's deposition.

Plaintiff's reliance on *Jones*, *supra*, 80 Cal.App.4th 557, although closer factually, is also unavailing. *Jones* concerned an expert in a legal malpractice action, who testified to the manner in which an attorney purportedly committed malpractice during a certain period of time. During his deposition the expert testified to specific opinions and affirmatively stated that they were the only opinions he would offer at trial. The expert indicated that if he developed further opinions, he would notify counsel. (*Id.* at p. 565.) The court thereafter limited the trial testimony of the plaintiff's expert witness, excluding testimony as to other conduct by the attorney after the timeframe addressed in the expert's deposition. (*Id.* at p. 564.) The defendant in *Jones* prevailed and the plaintiff appealed.

The appellate court in *Jones* noted that the expert witness's declaration was arguably broad enough to encompass his trial testimony. Nonetheless, it observed that under the circumstances "it would be grossly unfair and prejudicial to permit the expert to offer additional opinions at trial." (*Jones, supra*, 80 Cal.App.4th at p. 565.) Thus, it concluded that a party has a "right to rely on the other party's expert's express representation that the opinions expressed during an expert deposition are the only ones that need be met at trial." (*Id.* at pp. 565–566.)

■ However, the instant case is quite different from the situation in *Jones*, where testimony excluded by the trial court involved an entirely new area of testimony not previously disclosed. Here, Dr. Burkhard's trial testimony constituted merely an expanded description and interpretation of the conclusions stated in his deposition testimony. Although a party is required to " 'disclose the *substance* of the facts and the opinions to which the expert will testify,' " this "does not require disclosure of specific facts and opinions." (*Williams v. Volkswagenwerk Aktiengesellschaft* (1986) 180 Cal.App.3d 1244, 1257, 1258 [226 Cal.Rptr. 306].)

---

[2] The Code of Civil Procedure sections discussed in *Bonds* have been repealed but replaced by substantially similar provisions with different section numbers. (See Code Civ. Proc., §§ 2034.260, subd. (c)(2) & 2034.300, subd. (b).)

Dr. Burkhard properly disclosed " 'the general substance' " of his expected testimony, sufficiently so the parties could adequately prepare for trial. (*Bonds, supra*, 20 Cal.4th at p. 148.) Specifically, Dr. Burkhard testified at his deposition that one would not expect plaintiff to have suffered *any* injury. In response to a question by plaintiff's counsel as to whether in his opinion plaintiff "sustain[ed] *any* injury in this accident" (italics added), Dr. Burkhard explained, in pertinent part, "Not having read his depo or the medical records, the only way I can answer is this: if [plaintiff] is shown to be robustly healthy, relatively active prior to this accident, this accident poses no more threat [than doing everyday types of things around the house], and I would not have expected injury to him."

■ Thus, the general substance of Dr. Burkhard's opinion at the deposition was that one would not expect plaintiff to have suffered "any" injury. Therefore, his subsequent testimony at trial regarding the lack of any expectation of specific knee or shoulder injury resulted in no unfair surprise for plaintiff. Dr. Burkhard simply did not exceed the general scope of his deposition testimony when he opined at trial that one would not expect the accident to result in the specific knee and shoulder injuries complained of because the "forces are very comparable" to what would be experienced during normal "routine activities." Accordingly, the trial court did not abuse its broad discretion (see *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 972 [105 Cal.Rptr.2d 88]) in permitting Dr. Burkhard to so testify at trial.

Even assuming arguendo the testimony complained of was error, it was not so prejudicial as to have resulted in a miscarriage of justice warranting a new trial. (Evid. Code, § 353, subd. (b); see *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069 [232 Cal.Rptr. 528, 728 P.2d 1163].) The jury's special verdict finding that defendant's negligence was not "a *substantial* factor causing harm" (italics added) was supported by the testimony of plaintiff's own physician. Dr. Swanson testified that the vehicle accident in question resulted in only an "incremental" increase in plaintiff's symptoms and loss of function, and that it "wasn't the sole cause of the underlying process which is degenerative joint disease." Thus, even apart from questions of plaintiff's credibility and the minimal force of the impact involved, any error in permitting Dr. Burkhard's testimony about lack of causation was not prejudicial.

## DISPOSITION

The judgment is affirmed.

Doi Todd, J., and Chavez, J., concurred.