Filed 5/20/14  Certified for publication 6/16/14 (order attached)

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GEORGE STAUB et al., | C071500 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34200800029754-CUMMGDS) |
| v. | |
| JAMES KILEY et al., | |
| Defendants and Respondents. | |

Plaintiffs George and Julianne Staub appeal pro se from the judgment entered in favor of defendants James M. Kiley (Kiley) and Regents of the University of California (Regents) following defendants' successful motion for nonsuit.

In this action for medical malpractice, the trial court granted defendants' in limine motion precluding plaintiffs' expert witnesses from testifying at trial, on the ground plaintiffs unreasonably failed to timely disclose their designated trial experts after receiving a statutory demand from defendants. (Code Civ. Proc., §§ 2034.220, 2034.300, 2034.720; unless otherwise stated, statutory references that follow are to the Code of

1

Civil Procedure.)  Without designated experts, plaintiffs could not address at trial the element of causation of injury from the alleged medical negligence (see *Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1118) and the trial court found plaintiffs were likewise precluded without designated experts from maintaining their causes of action for lack of informed consent and fraudulent concealment.

On appeal, plaintiffs argue the trial court erred in granting defendants' in limine motion because (1) defendants themselves failed to comply with the expert disclosure demand requirements, and (2) the trial court erred in concluding plaintiffs acted unreasonably in disclosing their trial experts after "a minor and nonprejudicial delay." Finally, plaintiffs contend that, even if the court refused to allow their designated experts to testify, it should have allowed trial to proceed on the cause of action for "informed refusal."

We agree with plaintiffs that defendants lacked standing to move to exclude plaintiffs' experts from testifying at trial, and the trial court erred in concluding plaintiffs so unreasonably failed to comply with the expert disclosure demand that their experts could be properly excluded from testifying.  Accordingly, we reverse the judgment and order the matter reinstated.

FACTS AND PROCEEDINGS

A.    Pleadings and Overview of Plaintiffs' Claims

The background facts are summarized from the first amended complaint.

We note that George Staub was the individual who received the allegedly negligent medical treatment by defendants.  When referring to those events, we refer to George by his first name.

In May 2008, George was admitted to Mercy Hospital of Folsom with pain and swelling in his left leg and severe pain in his left groin.  George was treated by Kiley, his

2

primary care physician. Although George was diagnosed with deep vein thrombosis, no ultrasound or other procedure was performed which would have revealed a presence of a condition called May-Thurner Syndrome, treatment of which must begin within a week or two of the first symptoms to be effective. This occurred even though Kiley was informed by a specialist that the likely cause of George's pain was May-Thurner Syndrome, a fact he did not share with George. George was discharged over his objection and continued to experience pain; Kiley never ordered an ultrasound or other procedure to determine whether the cause of the pain was May-Thurner Syndrome.

In June 2008, George saw another physician and an ultrasound was performed at Regents' UC Davis Medical Center. Doctors there observed additional clotting extending in the left groin, but they did not test for May-Thurner Syndrome.

Doctors at Stanford Hospital tested George and discovered he suffered from May-Thurner Syndrome in January 2009, when it was too late for treatment. He now must take anticoagulants for the rest of his life and his pain and symptoms will never resolve.

Plaintiffs initiated this action against Kiley and others for medical malpractice, alleging that defendants' failure to properly treat George caused his extensive and permanent injuries. They also stated a cause of action for loss of consortium, based on the effect of defendants' actions on Julianne.

Kiley moved for summary judgment, arguing no triable issues of care exist relative to his liability. He submitted the declaration of a licensed physician specializing in vascular surgery who opined that the medical care rendered to George by Kiley was within the standard of care. Plaintiffs opposed the motion and submitted the declaration of their own medical expert, Dr. Kang, who opined Kiley overlooked numerous aspects of George's medical history suggesting the presence of May-Thurner Syndrome, and breached the standard of care by not following the specialist's advice in May 2008 to rule out May-Thurner Syndrome when it would have still been treatable. The trial court

3

denied Kiley's motion for summary judgment, and concluded Kiley's expert witness declaration was "patently inadequate" and conclusory.

Plaintiffs obtained leave to file a first amended complaint and, in February 2011, they added the Regents (Kiley's employer) as a defendant and added two causes of action against Kiley:  (1) a claim for fraudulent concealment, based on Kiley's alleged failure to inform George that he consulted with a specialist in May 2008 who advised Kiley to test for May-Thurner Syndrome, and (2) a claim for lack of informed consent, based on Kiley's alleged failure to inform George that a specialist in May 2008 advised Kiley to test for May-Thurner Syndrome, and failed to advise George of the dangers of failing to test for, and timely treat, May-Thurner Syndrome, so that he might make an informed choice to request such testing and treatment.

Defendants answered the first amended complaint, and trial was set for February 14, 2012.

### B.    Defendants' Demand for Expert Exchange, Motion in Limine, and Motion for Nonsuit

On December 6, 2011, defendants served by mail a demand for exchange of expert witness information pursuant to section 2034.210, and set the disclosure date for December 27, 2011.  In accordance with the date specified in their demand, defendants served their exchange of expert witness information on December 27, 2011.

Plaintiffs, however, did not serve their exchange of expert information on the date specified in defendants' demand.  The proof of service attached to their response states it was served by mail on January 9, 2012, although defendants later averred it was postmarked January 13 and they received it by fax on January 12 and by mail on January 14.  Plaintiffs identified Drs. Fullerton and Ley as their expert trial witnesses; they did not identify Dr. Kang, whose declaration had been submitted in opposition to summary judgment.

4

The same week, plaintiffs served a notice that due to a family emergency their attorney, Mr. Elstead, would be unavailable between January 14 and January 27, 2012, but could be reached by e-mail or telephone. Elstead also sent a letter to defendant's counsel stating that a family emergency would keep him out of the office until January 27, 2012.

Defendants objected to plaintiffs' tardy expert witness disclosure. Two days later, defendants moved unsuccessfully ex parte to shorten time on a motion to preclude plaintiffs from calling any expert witnesses at trial. No documents related to defendants' ex parte motion are in the appellate record.

On February 2, 2012, attorney Elstead faxed a letter to defense counsel stating that plaintiffs' experts would be available the following week for deposition. Defendants declined the offer the same day. They responded that plaintiffs' disclosure of experts was untimely, plaintiffs failed to seek relief from the delay, and plaintiffs' current offer of depositions did not meet the statutory requirements. Moreover, defendants asserted they had been "severely prejudiced" because such late depositions would not permit the Regents to engage in their customary process of evaluating settlement options by committee.

On the day set for trial, defendants moved in limine to preclude plaintiffs from presenting any expert witness testimony at trial. They argued the order was justified by plaintiffs' tardy disclosure of expert witnesses and their failure to seek leave from the court to make a belated disclosure. According to defendants, given attorney Elstead's limited availability, the depositions of two new, belatedly-disclosed experts could not be taken prior to the 15-day discovery cutoff, or in sufficient time to allow transcripts of their testimony to be prepared for evaluation by defense experts and the Regents, who act by committee. Moreover, defendants complained, Elstead had previously engaged in improper behavior in this case by misrepresenting to the court when he learned the

5

identity of Kiley's employer and he was disciplined by the State Bar in unrelated cases in 2005 and 2011.

Plaintiffs filed an "opposition to motion in limine to exclude expert testimony and motion to deem late disclosure reasonable," arguing that their late expert disclosure was not unreasonable and had not prejudiced defendants. They argued the time to disclose experts had been extended by five days from the stated exchange date by operation of section 1013; consequently, their actual exchange was only one week late. And, after the exchange, defendants never attempted to schedule the two named experts' depositions, and declined plaintiffs' offer making them available for deposition. Defendants cannot be surprised about what the experts will say, plaintiffs argued, given the extensive oral and written discovery defendants have conducted, and the facts developed during Kiley's summary judgment motion.

Attorney Elstead denied he acted willfully to obstruct discovery and submitted a declaration explaining his "unusual difficulty" and "unavoidable delay" locating and retaining experts Drs. Fullerton and Ley. Elstead determined in November 2011 to retain Fullerton (rather than Dr. Kang) to opine on the standard of care, but the subsequent holidays delayed Elstead's work with Fullerton necessary to secure Fullerton's agreement to testify, which Elstead did not obtain until January 9, 2012. Dr. Ley, who lives in Idaho, was travelling in Spain for several months and was unreachable; Dr. Ley did not agree to testify until January 8, 2012. Elstead explained that his unavailability was caused when his brother unexpectedly required cancer treatment and amputation surgery; under all the circumstances, the week-long delay in expert disclosure was not unreasonable. Plaintiffs also decried defendants' efforts to influence the court by disparaging attorney Elstead, who stated his 2005 and 2011 discipline was the result of his paralegal's misconduct.

Following an unrecorded hearing, the trial court granted defendants' motion in limine to preclude plaintiffs from presenting expert testimony at trial.

6

Defendants filed motions for nonsuit (the original and an amended motion), on the grounds plaintiffs' lack of expert witness testimony prevented them from establishing a prima facie case on any cause of action.

Plaintiffs opposed the motions for nonsuit, and moved separately for reconsideration of the court's order precluding their introduction of expert testimony or, alternatively, for a continuance to seek relief by writ of mandamus to compel the trial court to deny defendants' in limine motion to exclude plaintiffs' expert witnesses. Following a hearing, the trial court denied plaintiffs' motion for reconsideration of its prior decision to preclude their presentation of expert witnesses. The court granted their request for a temporary stay to seek writ relief, which was ultimately denied. (*Staub v. Superior Court*, Mar. 12, 2012, C070544.)

Thereafter, pursuant to stipulation of the parties and to save the time and expense of selecting a jury, the parties agreed that the trial court could rule on defendants' motion for nonsuit based upon plaintiffs' presentation of an exemplar anticipated opening statement. After receiving plaintiffs' exemplar opening statement and defendants' objections thereto (and having received no request for oral argument), the trial court granted defendants' request for nonsuit in its entirety and entered judgment in defendants' favor.

DISCUSSION

I

*General Principles and the Standard of Review*

The statutes governing expert witness discovery are part of the Civil Discovery Act. (§ 2016.010 et seq.) "The purposes of the discovery statutes are 'to assist the parties and the trier of fact in ascertaining the truth; to encourage settlement by educating the parties as to the strengths of their claims and defenses; to expedite and facilitate

preparation and trial; to prevent delay; and to safeguard against surprise.' [Citation.]" (*Boston v. Penny Lane Centers, Inc*. (2009) 170 Cal.App.4th 936, 950 (*Boston*).)

The expert witness exchange is triggered by a timely written demand made by any party after the initial trial date is set. (§ 2034.220.) Section 2034.260 sets forth the general requirements for the exchange and the information to be provided, which includes a list of the names and addresses of the experts (§ 2034.260, subd. (b)(1)) and a declaration by the party's attorney setting forth the expert's qualifications (§ 2034.260, subd. (c)(1)), the expected nature of the testimony (§ 2034.260, subd. (c)(2)), and "[a] representation that the expert will be sufficiently familiar with the pending action to submit to a meaningful oral deposition concerning the specific testimony, including any opinion and its basis, that the expert is expected to give at trial" (§ 2034.260, subd. (c)(4)).

A party demanding an expert witness exchange "may also include a demand for the mutual and simultaneous production for inspection and copying of all discoverable reports and writings, if any, made by any expert . . . in the course of preparing that expert's opinion." (§ 2034.210, subd. (c).) When, as here, a demand for documents is made, "all parties shall produce and exchange, at the place and on the date specified in the demand, all discoverable reports and writings, if any, made by any designated expert. . . ." (§ 2034.270.)

Failure to comply with these requirements can have drastic consequences. Section 2034.300 provides, "[O]n objection of any party who has made a complete and timely compliance with Section 2034.260 [concerning method and content of exchange], the trial court shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to do any of the following: [¶] (a) List that witness as an expert under Section 2034.260. [¶] (b) Submit an expert witness declaration. [¶] (c) Produce reports and writings of expert witnesses under Section 2034.270. [¶] (d) Make that expert available for a deposition. . . ."

8

We generally review the trial court's ruling on a motion to exclude expert testimony for abuse of discretion, including its determination that a party "unreasonably" failed to comply with an expert witness demand. (*Boston, supra*, 170 Cal.App.4th at p. 952.) A trial court's discretion is always delimited by the statutes governing the particular issue but when the exclusion of expert testimony rests on a matter of statutory interpretation, we undertake a de novo review. (*Id.* at p. 950; *Tesoro del Valle Master Homeowners Assn. v. Griffin* (2011) 200 Cal.App.4th 619, 639.)

II

*The Trial Court Erred in Granting Defendants' Motion to Exclude Plaintiffs' Experts From Testifying at Trial*

Plaintiffs first contend defendants lacked standing to seek to exclude the testimony of plaintiffs' experts because defendants themselves failed to "ma[k]e a complete and timely compliance" with the exchange procedures of section 2034.260. Plaintiffs are correct.

Section 2034.230, subdivision (b) states the date on which an expert witness demand may require the information to be exchanged: "The specified date of exchange shall be 50 days before the initial trial date, or 20 days after service of the demand, whichever is closer to the trial date" unless the trial court has found good cause to modify the exchange date. The Civil Discovery Act expressly provides that the five-day extension allowed by section 1013 applies to all discovery methods contemplated by the Act (§ 2016.050); section 1013, subdivision (a) provides that the time for performing any act is extended by five days when the demand or notice is served by mail within the state, as here.

Although we are unaware of any case authority explaining the operation of these statutes together, a leading treatise states: "[I]f an expert witness demand is served by mail, the exchange date must be extended accordingly (i.e., 5 days for mail within

California, 10 days outside state, etc.). With that extension, the exchange date may be closer to trial than 50 days, leaving less time to complete expert discovery." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶ 8:1649.2-8:1649.3, p. 8J-7.) Defendants' demand failed to extend the exchange date by five days by operation of section 1013; the exchange date should have been January 2, 2012. Defendants' demand to exchange on December 27, 2011, was "premature" and did not comply with the timing required by section 2034.260. In fact, the same treatise suggests that the effect of such miscalculation of the disclosure date might invalidate the demand: "**Effect of premature date?** A problem arises where the demand specifies a premature date for the exchange (e.g., does not include the extension required for service by mail). The court clearly has the power, upon motion for protective order, to change the date for the exchange [citation]. *Absent court intervention, it is not clear whether specifying a premature date invalidates the demand*." (Italics added, Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, 8:1649.4, p. 8J-7.)

Under these circumstances, plaintiffs are correct that defendants lacked standing to bring a motion under section 2034.300 to seek to preclude plaintiffs' expert witnesses from testifying at trial. Only a party that has itself "made a complete and timely compliance with Section 2034.260" may seek to exclude his opponent's experts for the opponent's unreasonable failure to comply with expert discovery. (Cf. *West Hills Hospital v. Superior Court* (1979) 98 Cal.App.3d 656, 660 [applying prior version of Civil Discovery Act, suggests a party not in strict compliance with expert disclosure requirements does not have standing to object to other party's expert disclosure failures].)

Even if defendants did have standing to bring a section 2034.300 motion, plaintiffs cannot be said to have unreasonably failed to comply with defendants' expert witness demand, so as to justify excluding plaintiffs' experts' testimony. Although section 2034.300 does not provide explicit guidance as to how a court should decide if the party's failure was reasonable or unreasonable, the record does not support the trial

10

court's implicit conclusion that plaintiffs behaved so unreasonably as to warrant exclusion of their experts' opinion testimony.

Failure to comply with expert designation rules may be found to be "unreasonable" when a party's conduct gives the appearance of gamesmanship, such as undue rigidity in responding to expert scheduling issues. (*Stanchfield v. Hamer Toyota, Inc.* (1995) 37 Cal.App.4th 1495, 1504.) The operative inquiry is whether the conduct being evaluated will compromise these evident purposes of the discovery statutes: "to assist the parties and the trier of fact in ascertaining the truth; to encourage settlement by educating the parties as to the strengths of their claims and defenses; to expedite and facilitate preparation and trial; to prevent delay; and to safeguard against surprise." (*Id.* at p. 1504 [holding that the court did not abuse its discretion in allowing expert testimony].)

In *Zellerino v. Brown* (1991) 235 Cal.App.3d 1097 (*Zellerino*), the conduct being evaluated was a party's production of late, incomplete expert witness information, coupled with refusal to make the experts available for deposition. Collectively, this conduct amounted to "a comprehensive attempt to thwart the opposition from legitimate and necessary discovery," justifying exclusion of evidence. (*Id.* at p. 1117; see also *Boston, supra*, 170 Cal.App.4th at p. 952 [if court concludes a party "intentionally manipulated the discovery process" to ensure that expert reports were not created until after the specified exchange date, it may find the failure to produce them was unreasonable and exclude the expert's opinions].)

The record here does not support a determination that plaintiffs so unreasonably failed to timely disclose their experts that exclusion of all expert testimony was warranted. Neither plaintiffs nor their counsel engaged in actions that can be characterized as gamesmanship nor did they engage in a "comprehensive attempt to thwart the opposition from legitimate and necessary discovery," justifying exclusion of evidence. (Cf. *Zellerino, supra*, 235 Cal.App.3d at p. 1117.) Plaintiffs' counsel averred

11

he did not determine to change experts (from Kang to Fullerton and Ley) until November 2011, but then had difficulty reaching them over the December 2011 holidays and as a result of Ley's travelling in Spain, and was not able to designate them until after the first week in January 2012; close to two weeks after exchange date contained in the demand. Moreover, shortly after the exchange, plaintiffs offered to make the experts available for deposition, an offer defendants promptly declined. (*Boston, supra*, 170 Cal.App.4th at p. 954 [the opportunity for meaningful deposition is one of the circumstances the trial court should consider when making the reasonableness determination].) While counsel's late arrangements for experts are not evidence of an ideal practice, they do not show an attempt to thwart defendants' discovery.

Defendants' actions, including their refusal to depose plaintiffs' experts, are not irrelevant. "The behavior of the party seeking to exclude the expert testimony is relevant to the reasonableness inquiry. If any unfairness arising from the proffering party's late or incomplete disclosure was exacerbated by the party seeking exclusion, the court is less likely to find the conduct of the party offering the expert to be unreasonable." (*Boston, supra*, 170 Cal.App.4th at p. 954.)

Any unfairness arising from plaintiffs' tardy expert disclosure was exacerbated by defendants' refusal to depose plaintiffs' experts. Defendants made a strategic choice not to depose plaintiffs' experts on the grounds the disclosure was late and depositions so close to the trial date would not permit the Regents to engage in their customary process of evaluating settlement options by committee; defendants made the same argument in support of their motion to exclude plaintiffs' experts from testifying. We do not agree that a party's ability to conform to its preferred decision making process necessarily excuses its refusal of a deposition offer; further, we are certain it does not weigh in favor of finding plaintiffs' actions "unreasonable" so as to exclude their experts' testimony. And the Regents' preferred decision making process plainly provides no ground for Kiley, the individual physician defendant, to either reject plaintiffs' offer to depose their

12

witnesses or to argue in favor of excluding plaintiffs' experts, as he had no decision making process with which to conform.

In light of the foregoing, we conclude the trial court abused its discretion in sustaining the defendants' objection to plaintiffs' experts pursuant to section 2034.300.

Our conclusion in this regard is bolstered by the fact that the order excluding plaintiffs' experts from testifying at trial was in effect a terminating sanction, as it eviscerated plaintiffs' case. The "general rule [is] that a terminating sanction may be imposed only after a party fails to obey an order compelling discovery . . . ." (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1426.) Here, there was no history of discovery abuse by plaintiffs which would warrant the imposition of a terminating sanction. This case is not remotely on a par with the type of case in which a sanction of this type is warranted. (Compare, *Zellerino, supra,* 235 Cal.App.3d at p. 1117 ["near-total failure" to comply with requirements of expert disclosure statute].)

Having concluded the trial court abused its discretion in finding plaintiffs unreasonably failed to disclose their experts, we need not address the other contentions of error raised by plaintiffs.

DISPOSITION

The judgment is reversed with directions to reinstate the action.  Plaintiffs shall recover their costs on appeal.

       HULL       , J.

We concur:

     BLEASE     , Acting P. J.

     DUARTE     , J.

14

Filed 6/16/14

CERTIFIED FOR PUBLICATION

# COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GEORGE STAUB et al., | C071500 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34200800029754-CUMMGDS) |
| v. | |
| JAMES KILEY et al., | ORDER OF PUBLICATION |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior court of Sacramento County, Trena H. Burger-Plavan, Judge.  Affirmed.

George and Julianne Staub, in pro. per., for Plaintiffs and Appellants.

Thomas G. Minder & Associates, Thomas G. Minder and Randi L. Fujimoto for Defendants and Respondents.

1

THE COURT:

The opinion in the above-entitled matter filed on May 20, 2014, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.



      BLEASE       , Acting P. J.



      HULL       , J.



      DUARTE       , J.