Filed 8/12/25  Watson v. The Regents of the University of California CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GLORIA WATSON,<br><br>    Plaintiff and Appellant,<br><br>      v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>    Defendants and Respondents. | B337157<br><br>(Los Angeles County Super. Ct. No. 20STCV25254) |

APPEAL from an order of the Superior Court of Los Angeles County.  Lee S. Arian, Judge.  Affirmed.

Cwiklo Law Firm and David Peter Cwiklo for Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Matthew S. Levinson; Packer, O'Leary & Corson, Robert B. Packer and John Aitelli for Defendants and Respondents.

————————————————

Gloria Watson sued Aparna Sridhar, M.D., Jenny Yang Mei, M.D., and the Regents of the University of California (collectively, the Regents).  After the expert witness discovery cut-off date passed without Watson making her expert witness available for deposition, the trial court granted the Regents' motion to exclude the witness's testimony.  Watson voluntarily dismissed her complaint with prejudice and now appeals.  To the extent the dismissal order is appealable, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Alleging the Caesarian section delivery of her child was medically unnecessary, motivated by financial considerations, conducted without her consent, and performed in violation of the standard of care, and that her doctors' negligence was fraudulently concealed from her, Watson sued the Regents for medical negligence, medical battery, breach of fiduciary duty, fraudulent concealment, and intentional infliction of emotional distress.  Only the medical negligence and battery causes of action survived the Regents' motion for summary judgment/summary adjudication.

Trial was scheduled for December 28, 2021.  The parties demanded the exchange of expert witness information during discovery.  On October 11, 2021, Watson designated one expert witness, Felice Gersh, M.D.  Watson stated the general substance of Gersh's testimony would be "the issue of damages, including the nature and extent of plaintiff Gloria Watson's healthcare she received from defendants . . . and related physical and/or emotional injuries, causation, diagnosis, prognosis, need for future medical care, including but not limited to those opinions she previously disclosed in her prior July 28, 2021 declaration

2

submitted in support" of Watson's opposition to the Regents' motion for summary judgment/summary adjudication.

On November 5, 2021, the Regents served a deposition notice setting Gersh's deposition for November 22, 2021. On November 17, 2021, Watson served an objection to the deposition notice stating that Gersh would not appear. Watson's counsel said he would "endeavor to make mutually convenient arrangements" for Gersh's deposition.

On November 29, 2021, the Regents filed an ex parte application to continue the trial and related cut-off dates. The trial court granted the application and set October 26, 2022, as the new trial date.

On September 6, 2022, the Regents served a deposition notice setting Gersh's deposition for September 29, 2022. In a letter accompanying the notice, the Regents asked Watson's counsel to advise them if that date was not convenient for counsel or Gersh, in which case the deposition would be rescheduled to a mutually convenient date.

Watson again objected to the deposition notice and stated Gersh was unavailable. The parties conferred and agreed on a mutually convenient date, and on September 21, 2022, the Regents served notice that the deposition had been continued to October 4, 2022.

On September 27, 2022, the Regents' trial counsel was informed that a long-cause case with preferential trial status had been transferred and was now trailing in anticipation of assignment to a trial department. The court in the long-cause case ordered counsel to advise judicial officers in other cases with final status conferences and trial dates that the matter was trailing for a preference trial.

On September 28, 2022, the Regents submitted an ex parte application to continue the trial date for at least 120 days because of the imminent long cause trial, which was expected to last 60 days. On September 29, 2022, the trial court continued the hearing on the application to continue and invited the parties to submit a stipulation to continue the trial date and any discovery. Counsel conferred that day, and Watson's attorney sent a confirming email stating, "Pursuant to my conversation with [the Regents' counsel] just moments ago, next week's **October 4, 2022 deposition at 3:00 p.m.** of plaintiff Gloria Watson['s] expert ob-gyn Felice Gersh, M.D. has been taken off-calendar in light of defendants' Ex Parte Motion to Continue the trial due to trial counsel['s] unavailability in an anticipated 60-day long cause [Code of Civil Procedure section 36, subdivision (b)] preference trial. [¶] It appears this matter will likely be rescheduled to the week of **May 31, 2023** based upon the respective current calendars. We agree that all trial-related due dates will be triggered from the newly established trial date. [¶] Please forward the paperwork as we discussed."

After a second hearing on October 3, 2022, the trial court continued the trial to May 31, 2023. On October 5, 2022, Watson's counsel wrote to the Regents' counsel asking what Gersh should do with the expert fee the Regents had issued for the canceled October 4 deposition. The Regents' counsel asked that Gersh return the check and stated a new one would be issued when her deposition was taken the following May.

On April 11, 2023, the Regents served a notice setting Gersh's deposition for May 10, 2023. In a letter accompanying the deposition notice, the Regents again asked Watson's counsel to advise them if the noticed date was not convenient for counsel

4

or Gersh, in which case the deposition would be rescheduled to a mutually convenient date. Watson's counsel again objected to Gersh's deposition taking place as noticed. She represented that Watson would be produced for deposition on a mutually convenient date but did not offer any possible dates.

On May 8, 2023, due to their trial counsel's engagement in other trials, the Regents again sought a continuance of the trial. Watson agreed to the continuance, and the trial court continued the trial to January 17, 2024. The court ordered expert discovery and related motions, trial-related documents and motions in limine continued to the new trial date, but all other pretrial deadlines, including non-expert discovery, expert witness designations, and non-expert law and motion deadlines remained closed.

On November 6, 2023, the Regents' counsel e-mailed Watson's counsel asking for potential dates for Gersh's deposition and inquiring if counsel and Gersh would be available for trial on the set date of January 17, 2024. Watson's law firm responded on November 7, 2023, "We will provide your office with a mutually convenient date for Dr. Gersh's availability for deposition in *Watson*."

On November 13, 2023, the Regents' counsel asked again whether Watson's counsel and expert would be available to start trial on January 17, 2024.

On November 17, 2023, the Regents set a fifth date for Gersh's deposition: December 15, 2023. Again, the Regents offered to reschedule the deposition if December 15 was not convenient for Gersh or counsel.

On November 30, 2023, Watson's counsel sent an e-mail to counsel for the Regents stating that "Gersh is not available for

the December 15, 2023 deposition you have unilaterally noticed as she will be a speaker at an out-of-state conference on that date. [¶] I have asked her to provide me with dates, but she conveyed her December is packed. I have yet to hear back from her. I will put in another call to follow up." That same day, Watson's counsel served an objection to the deposition notice in which he asserted that neither he nor Gersh would appear for the deposition on December 15, 2023, and complained that the Regents had unilaterally set the deposition without contacting Watson's counsel to find out when counsel and Gersh would be available and identifying a mutually agreed-upon date and time for the deposition.

The expert discovery window closed on January 2, 2024. (Code Civ. Proc.,[1] § 2024.030.) At 8:11 a.m. on January 4, 2024, less than two hours before the final status conference, Watson's counsel e-mailed the Regents' counsel that Gersh was available for deposition on January 22, 2024.

At the final status conference on January 4, 2024, the Regents advised the court they intended to file a motion to exclude Gersh's testimony and asked the court to continue the trial date to hear their motion. The court set a February 14, 2024 hearing on the Regents' motion and continued the trial to March 18, 2024. The court stated in its minute order, "All discovery and related deadlines are to remain closed and tied to the prior trial date of 01/17/24." On January 5, 2024, the Regents filed their motion to exclude Gersh's trial testimony pursuant to section 2034.300 because Watson had unreasonably failed to make her available for deposition.

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

On January 8, 2024, Watson noticed Gersh's deposition for January 22, 2024. The Regents objected on the ground that expert witness discovery had already closed and had not been reopened by the trial court, and they advised Watson they would not attend. Watson deposed Gersh anyway.

Watson filed her opposition to the motion to exclude Gersh's testimony on January 31, 2024. She claimed the Regents had known Gersh's opinions since they were stated in a July 2021 declaration in opposition to the Regents' motion for summary judgment/adjudication; the motion to exclude was mooted by Watson's January 22, 2024 deposition of Gersh; the Regents should be held accountable for violating civility rules by not meeting and conferring before setting deposition dates; Gersh and both trial counsel were unavailable for deposition in December 2023; the motion to exclude was an impermissible attempt to seek summary judgment again; and the Regents had delayed the trial by requesting continuances.

On February 14, 2024, the trial court granted the Regents' motion to exclude Gersh's expert testimony on the ground that Watson had unreasonably failed to make Gersh available for deposition. The court wrote, "The Court finds Plaintiff's conduct unreasonable. Expert discovery closed on January 2, 2024. Defendants have not had the opportunity to depose Dr. Gersh or, as discussed further below, learn her opinions through her reports and writings. On three separate occasions, Defendants' counsel has communicated their flexibility in scheduling Dr. Gersh, but Plaintiff offers no explanation for her rigidity, including any explanation for why she could not reschedule a deposition upon receiving the deposition notice on April 11, 2023. The Court notes that Plaintiff has only explained why she could

7

not reschedule the deposition notice served on November 17, 2023. In addition, . . . the Court does not understand why Plaintiff would depose her own expert after the close of expert discovery and assert that the instant motion is moot. Accordingly, the Court grants the motion."

On February 26, 2024, Watson voluntarily dismissed the action with prejudice. This appeal followed from the order excluding Gersh's testimony and entry of dismissal.

## DISCUSSION

### I.    *Appealability*

The Regents argue the appeal should be dismissed, or the dismissal of the action affirmed, because Watson voluntarily dismissed her action with prejudice and therefore cannot demonstrate the existence of an appealable order or judgment. (See *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696 ["A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment"].) The question of whether a voluntary dismissal with prejudice is an appealable order if it was entered after an adverse ruling by the trial court in order to expedite an appeal of the ruling is presently before the California Supreme Court. (*Maniago v. Desert Cardiology Consultants' Medical Group* (2025) 109 Cal.App.5th 621, review granted May 28, 2025, S290188.) We need not resolve this open issue because assuming, arguendo, that there is an appealable order here, Watson's appeal fails on other grounds.

### II.    *Ruling on the Motion to Exclude Gersh's Testimony*

Watson argues we should review de novo the trial court's ruling on the motion to exclude Gersh's testimony because

8

summary dispositions are reviewed de novo (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037), and this ruling was "akin to a summary disposition" because she could not meet her burden of proof at trial without Gersh's testimony. However impactful the ruling may have been for Watson's case, it was not the equivalent of a summary judgment or adjudication; it was a ruling on what evidence would be admitted at trial based on Watson's conduct during discovery. Watson also asserts the de novo standard of review applies because the exclusion of Gersh's testimony "rests on a matter of statutory interpretation of Section 2034.270." Not only has Watson forfeited this contention by failing to offer legal argument disclosing her reasoning and supporting her view (*E.I. v. El Segundo Unified School Dist.* (2025) 111 Cal.App.5th 1267, 1289 ["an appellant waives contentions that are conclusory and not supported by cognizable legal argument or analysis"]), but also the exclusion of Gersh's testimony does not turn on the interpretation of section 2034.270.[2]

In her reply brief, Watson argues for the first time that de novo review is appropriate because the trial court's failure to exercise discretion is a question of law. "As a general rule, points not addressed until a reply brief will not be considered unless good reason is shown for failing to address them earlier." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852, fn. 10.) No good cause has been shown here.

---

[2] Watson does allege the trial court "wrongfully insinuated" that section 2034.270 required the expert to prepare reports and writings, but this argument, addressed in Section III.F of the Discussion, *post*, neither requires statutory interpretation nor establishes error in the exclusion of Gersh's expert testimony.

9

We review the trial court's ruling on the motion to exclude Gersh's testimony for an abuse of discretion. (*Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 950; *Ajaxo, Inc. v. E\*Trade Financial Corp.* (2020) 48 Cal.App.5th 129, 181 (*Ajaxo*).) Under the abuse of discretion standard of review, "[t]he appropriate test . . . is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479.) To demonstrate an abuse of discretion, the appellant bears the heavy burden of showing the court had no reasonable basis for its action. (*Cradduck v. Hilton Domestic Operating Company, Inc.* (2025) 112 Cal.App.5th 284, 299.)

Section 2034.300, subdivision (d) provides that the trial court shall exclude from evidence the expert of any witness that is offered by a party who has unreasonably failed to make the expert available for deposition, as long as the objecting party has complied with certain expert exchange requirements. A party's failure to comply with the rules for expert designation and discovery "may be found to be 'unreasonable' when [that] party's conduct gives the appearance of gamesmanship, such as undue rigidity in responding to expert scheduling issues." (*Staub v. Kiley* (2014) 226 Cal.App.4th 1437, 1447 (*Staub*).) "The operative inquiry is whether the conduct being evaluated will compromise these evident purposes of the discovery statutes: ' "to assist the parties and the trier of fact in ascertaining the truth; to encourage settlement by educating the parties as to the strengths of their claims and defenses; to expedite and facilitate

10

preparation and trial; to prevent delay; and to safeguard against surprise." ' " (*Ibid.*)

We find no abuse of discretion here. The trial court very reasonably concluded Watson unreasonably failed to make Gersh available for deposition. Over the course of the litigation, the Regents repeatedly expressed their willingness to schedule Gersh's deposition at a convenient date, but each time they sent a deposition notice, Watson responded that Gersh was unavailable. Although Watson's objections to the deposition notices stated that Watson's counsel would try to make mutually convenient arrangements for the deposition, the record demonstrates little to no efforts in that regard in the years prior to the expert discovery cut-off beyond the parties' joint selection of the October 4, 2022 deposition date that ultimately did not go forward because the Regents' counsel was engaged in trial.

The Regents tried again to secure Gersh's deposition with a notice served April 11, 2023, setting a deposition date of May 10, 2023. Neither in the trial court nor on appeal did Watson explain why she could not have rescheduled the deposition if the selected date was unacceptable.

On November 6, 2023, the Regents asked Watson's counsel for dates Gersh was available for deposition and asked if Watson and Gersh anticipated being available for the scheduled January 17, 2024 trial. Watson's law firm responded on November 7, 2023, that they would provide a mutually convenient date for the deposition. A week after their original inquiry, the Regents' counsel again asked if Watson and their expert were available on the date set for trial, but there is no evidence in the record that Watson responded.

11

On November 17, 2023, 11 days after their request for available dates for Gersh's deposition and with none having been provided, the Regents noticed Gersh's deposition for December 15, 2023. Rather than promptly rescheduling the deposition, Watson waited until November 30, 2023, to advise the Regents that Gersh was not available on the selected date. Watson's counsel did not offer any alternative date for the deposition at that time. He said he would follow up with Gersh regarding her availability; but the expert discovery deadline passed without Watson offering any available date for Gersh's deposition. Only hours before the January 4, 2024 final status conference was to begin did Watson suggest a deposition date, and that date was January 22, 2024—five days after trial was set to begin.

Watson's conduct reasonably may be interpreted as demonstrating undue rigidity in responding to expert scheduling issues, apparent gamesmanship, and frustration of the discovery process and its associated purposes. (*Staub*, *supra*, 226 Cal.App.4th at p. 1447.) We cannot say the trial court's conclusion that Watson unreasonably failed to make Gersh available for deposition exceeded the bounds of reason or that there was no reasonable basis for its ruling.

Watson argues the court's ruling was an abuse of discretion because Gersh and counsel for both parties were all unavailable for deposition between December 15, 2023 and January 4, 2024, and the failure to produce Gersh for deposition was a mere calendar conflict. Gersh, Watson argues, had an impossible December 2023 calendar. But the Regents asked Watson's counsel for available dates on November 6, 2023, and Watson does not assert, much less demonstrate, that a November 2023 deposition was not possible. However "impossible" Gersh's

12

schedule may have been, Watson could have communicated this in a timely fashion to the Regents, made an effort to find a time to produce Gersh for deposition before December or another time before the discovery cut-off, or proposed the parties seek a continuance to allow the deposition to be scheduled. Instead of conferring promptly with the Regents concerning scheduling, Watson's counsel did not provide any deposition dates to the Regents as his firm had agreed to do; and then, when the Regents noticed Gersh's deposition on November 17, 2023, he waited almost two weeks—until the very end of November—to respond that Gersh was unavailable on the selected date. The trial court reasonably interpreted this as unreasonable scheduling rigidity and apparent gamesmanship.

As for Watson's counsel's unavailability, the opening brief seems to suggest counsel was unavailable for most or all of December 2023, but the declaration upon which Watson relies to support this argument states that on December 22, 2023, Watson's counsel advised the Regents of his unavailability because he had two trials set to begin after Christmas. This small period of unavailability does not indicate any abuse of discretion in concluding that Watson had unreasonably failed to produce Gersh for deposition.

Similarly, the Regents' trial counsel had arranged to be out of the office for the last two weeks of the month. However, that does not mean he would have been unavailable to conduct a deposition before or during that time if Watson had communicated Gersh's availability and offered a date for Gersh's deposition in a timely manner when the Regents' asked for dates and/or served the deposition notice. None of these arguments establishes abuse of discretion by the trial court. A party does

13

not meet its burden of establishing an abuse of discretion by "present[ing] a state of facts which simply affords an opportunity for a difference of opinion." (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 118.)

Watson asserts that Regents' refusal to participate in the January 22, 2024 deposition of Gersh that she noticed and took after expert discovery had closed demonstrates that the Regents had "dishonestly misrepresented to [the trial] court they needed Dr. Gersh's deposition '*to learn her opinions*'" and were merely "stag[ing] a phony brouhaha," when actually deposing Gersh was not important to them at all. The trial court was well within its discretion to conclude that Watson's last-minute deposition of her own expert, noticed after expert discovery had concluded and the motion to exclude Gersh's testimony had already been filed, was "an effort to thwart the rules," not a meaningful effort to make Gersh available for deposition. We acknowledge it is true that the actions of the party seeking to exclude the testimony of the other party's expert witness are "not irrelevant," particularly if the party seeking to exclude the testimony acted in a way that exacerbated the unfairness of the failure to follow the expert designation rules. (See *Staub*, *supra*, 226 Cal.App.4th at pp. 1447–1448). Nevertheless, it smacks of gamesmanship to blame the party who has been unable to depose the expert witness within statutory time limits for refusing to conduct an expert witness deposition after the close of expert witness discovery under whatever circumstances the other party prescribes, no matter how unreasonably the other party has acted by failing to make the witness available for deposition.

14

We are similarly unconvinced by Watson's argument that the trial court's ruling was an abuse of discretion because the Regents had known all of Gersh's opinions since 2021. When deposing her own expert on January 22, 2024, Watson elicited testimony from Gersh that her testimony that day was "consistent" with the declaration she gave in 2021 in opposition to the Regents' motion for summary judgment and that she had added nothing materially different from that declaration in her deposition testimony. From this, Watson argues that the Regents were feigning the need to depose Gersh because they had known her opinions since the declaration was filed in July 2021 and the expert witness designation was made in October 2021; and Gersh merely confirmed her opinions again at deposition on January 22, 2024. The 2021 declaration cannot possibly have been sufficient to apprise the Regents of all of Gersh's opinions. When Watson designated Gersh as an expert witness, she specifically stated that the topics Gersh would testify to at trial were *not* limited to the opinions stated in her 2021 declaration. Nor was the expert designation sufficient, because "[a]lthough a party is required to ' "disclose the *substance* of the facts and the opinions to which the expert will testify," ' this 'does not require disclosure of specific facts and opinions.' " (*DePalma v. Rodriguez* (2007) 151 Cal.App.4th 159, 165.) More fundamentally, neither a declaration in opposition to summary judgment nor an expert witness designation is an adequate substitute for the ability to prepare for trial by fully exploring the expert's opinions and the bases for them. The expert witness disclosure procedures are intended "to allow sufficient time before trial for experts to be identified *so that the subject matter of their expected testimony can be fully explored at a deposition.*" (*Bonds v. Roy* (1999)

15

20 Cal.4th 140, 146, italics added.) Watson has not shown that the opportunity to depose an expert witness is superfluous if the expert was designated and/or signed a declaration prior to trial.

Watson also argues the trial court erred in excluding Gersh's testimony because before doing so, it should have issued an order compelling Gersh's deposition. She asserts the Regents "cannot secure the extreme terminating sanction without a prior, lesser discovery [o]rder compelling" Gersh's deposition, and claims the Regents "had an obligation" to first move to compel the deposition and then seek sanctions for the willful violation of that court order before a terminating sanction could be imposed. Nothing in the text of section 2034.300 requires a party to file a motion to compel, obtain an order compelling the witness to be produced for deposition, and then wait for the order to be violated before a motion to exclude the expert's testimony may be brought and granted under this provision, and we see no basis for importing such a requirement into the statute. (See, e.g., *Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 906 [specific provisions of section 2034.300 rather than general discovery misuse provisions are to be applied in context of expert witness testimony exclusion]; see also *Ajaxo*, *supra*, 48 Cal.App.5th at p. 181 [liberal policies of the discovery statutes "carr[y] less force when the decision under review is the denial of expert testimony for noncompliance with expert witness disclosure requirements. The expert witness disclosure requirements are intentionally rigorous."].) The authority Watson cites to support her argument, sections 2034.410 and 2025.450, do not require that any such steps be taken before the expert opinion of a witness offered by a party who unreasonably failed to make the expert available for a deposition may be

16

excluded pursuant to section 2034.300, subdivision (d).  Watson's arguments about when terminating sanctions may be imposed, all of which are based on the provisions of section 2025.450 and the legislative policy of escalating sanctions embraced in that statute, do not apply in the context of a different discovery statute specifically providing when expert witness opinions may be excluded from evidence.

III.   ***Watson's Remaining Arguments***

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)  " '[T]o demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146.)  We " 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' " (*Id.* at p. 153.)

"Each argument made in an appellate brief must be 'under a separate heading or subheading summarizing the point,' and each point must be supported 'by argument and, if possible, by citation of authority.' (Cal. Rules of Court, rule 8.204(a)(1)(B).)  When a party fails to place an argument under a proper heading or subheading, we need not consider the issue." (*Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 323; see also *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 (*Pizarro*) ["Failure to provide proper headings forfeits issues that may be discussed in

17

the brief but are not clearly identified by a heading"].) Litigants must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) Statements of fact not supported by references in the record are disregarded by the reviewing court (*McOwen v. Grossman* (2007) 153 Cal.App.4th 937, 947), and arguments not supported by the necessary citations to the record are forfeited. (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

Watson has failed to comply with these rules. Her briefing is replete with unsupported factual assertions.[3] Her arguments, although preceded by headings, include sub-argument sections that appear to veer from the overall argument topic. Frequently it cannot be determined how her contentions relate to the point stated in her heading. Her arguments are often repetitive, conclusory, and fail to disclose the reasoning by which she reaches the conclusions she urges. To the extent we have been able to identify properly presented arguments, we have discussed them above. With respect to Watson's remaining arguments, all of which suffer from one or more of these infirmities, the failure

---

[3] Watson's first citation to the record on appeal is located on page 22 of her opening brief. Her five-page "INTRODUCTION" and her "STATEMENT OF APPEALABILITY" contain no citations to the record, her nine-page "STATEMENT OF THE CASE" contains only one, and the vast majority of factual assertions in her seven-page "PROCEDURAL HISTORY" are not supported by citations to the record on appeal. Similarly, the "ARGUMENT" portion of her opening brief contains countless unsupported factual assertions: more than half of the 32 pages of argument lack even a single record citation.

18

to support arguments with citations to the record and "to present complete and coherent headings and legal arguments is significant because, as the appellant, it is [her] burden to overcome the presumption on appeal that the underlying order is correct. [Citation.] [Appellant's] manner of briefing does not overcome that presumption." (*Pizarro, supra*, 10 Cal.App.5th at p. 181.)

## DISPOSITION

The order is affirmed. Respondents shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.