Filed 1/19/21  Powell v. Lemus CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| XAVIER A. POWELL, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DOLLY G. LEMUS, <br><br> Defendant and Respondent. | B296583 <br><br> (Los Angeles County Super. Ct. No. BC613309) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Frank Johnson, Judge.  Affirmed.

The Appellate Law Firm, Corey Evan Parker, and Berangere Allen-Blaine, for Plaintiff and Appellant.

Farmer Case & Fedor, John T. Farmer, and Joyce R. Dondanville; Horvitz & Levy, Steven S. Fleischman, and Yen-Shyang Tseng, for Defendant and Respondent.

# INTRODUCTION

Xavier Powell sued Dolly Lemus after Lemus hit Powell's car with her car. A jury awarded Powell $7,663 in damages. Powell appeals from the judgment, arguing that the trial court abused its discretion in permitting two of Lemus's expert witnesses to testify at trial and that the damages award was inadequate. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Powell Sues Lemus*

In April 2015 Lemus rear-ended Powell's car with her car while Powell was stopped at a traffic light. Powell sued Lemus for negligence. Lemus conceded she was negligent, but disputed the extent of Powell's injuries from the accident and the reasonable costs of Powell's medical treatment for those injuries.

B. *The Trial Court Denies Powell's Motion To Exclude the Testimony of One of Lemus's Expert Witnesses*

In July 2017—over a year before trial commenced—Lemus designated Dr. Peter Burkhard as an expert witness to testify about accident reconstruction and the expected injuries from the accident. In June 2018 counsel for Powell agreed with counsel for Lemus on a date for Dr. Burkhard's deposition, but counsel for Powell canceled the scheduled deposition.[1] In August 2018

---

[1] It appears Dr. Burkhard's deposition had already been scheduled and cancelled at least twice, but it is not clear whether counsel for Powell or counsel for Anthony Hall, another plaintiff

2

counsel for Powell served a new notice to take Dr. Burkhard's deposition in Los Angeles, despite several requests by counsel for Lemus that the deposition occur in Orange County, where Dr. Burkhard had his office.

On September 12, 2018, the day before Dr. Burkhard's scheduled deposition, counsel for Lemus again asked counsel for Powell to agree to depose Dr. Burkhard in Orange County. Counsel for Powell told counsel for Lemus that he intended to take Dr. Burkhard's deposition in Los Angeles, as stated in the deposition notice. Counsel for Lemus responded that she "did not agree to have the deposition taken" in Los Angeles and that she would only make Dr. Burkhard available for deposition in Orange County. Counsel for the parties exchanged multiple emails reiterating their positions. On the morning of the deposition, counsel for Lemus said Dr. Burkhard was available for a deposition in Orange County on certain days the following week. When Dr. Burkhard did not appear for his deposition in Los Angeles, a court reporter certified his nonappearance. Counsel for Powell never responded to counsel for Lemus's offer to make Dr. Burkhard available for deposition in Orange County the following week, nor did counsel for Powell otherwise seek to depose Dr. Burkhard before trial.

On October 25, 2018 Powell filed a motion in limine to preclude Dr. Burkhard from testifying at trial on the ground Dr. Burkhard did not appear for his deposition. On November 5, 2018, the first day of trial, the trial court denied Powell's motion, stating that it was "pretty obvious that [Powell's] counsel must have known" Dr. Burkhard would not appear for his deposition in

_____

in the action, did the canceling. Hall settled with Lemus before trial.

3

Los Angeles and that "there were opportunities" for Powell's counsel to depose Dr. Burkhard after he did not appear for the deposition. The trial court also ruled Powell could still depose Dr. Burkhard before he testified, and the court ordered counsel for Lemus to use their best efforts to make Dr. Burkhard available for a deposition. The court also offered to continue the trial for a day to allow counsel for Powell to depose Dr. Burkhard, an invitation counsel for Powell declined. Powell did not depose Dr. Burkhard before he testified.

C.      *The Jury Awards Powell $7,663 in Damages*

At trial Powell described the medical treatment she received after the accident. She testified that, immediately after the accident, she felt pain in her left elbow, neck, and back, felt pressure in her right leg, and had a headache. She went to the emergency room, where a doctor examined her and prescribed medication. Over the next several months Powell continued to experience pain and received treatment from several medical providers. Her treatment included physical therapy, X-ray tests, two magnetic resonance imaging scans (MRIs), one epidural injection in her neck and one in her back, and a corticosteroid shot in her knee. Powell claimed that she had incurred over $75,000 in medical expenses as a result of the accident.

Powell called Thomas Fugger, an accident reconstruction and biomechanics consultant, to testify at trial. Fugger opined that Lemus's car was traveling approximately 13 to 15 miles per hour when it hit Powell's car, which caused Powell's car to "undergo a velocity change of between eight to 10 miles [per] hour." Considering Powell's claimed injuries, Fugger testified that "certainly the neck" would be "a potential area of exposure"

4

from the accident, but that the lumbar spine would be "a bit less so from a biomechanical point of view." Dr. Michael Schiffman, an orthopedist who treated Powell, reviewed Powell's medical expenses and testified the costs of her treatment were generally reasonable, although some of the costs, including the MRIs and one of the epidural injections, were high.

Lemus called Dr. Burkhard, who disagreed with Fugger's opinions. He testified that the difference in speed between Lemus's car and Powell's car when the accident occurred was less than 10 miles per hour and that Powell's car would have increased no more than seven miles per hour as a result of the accident. He testified he would normally expect no injuries from that change in speed.

Dr. Stephen Rothman, a radiologist, reviewed Powell's X-ray scans and MRIs. Dr. Rothman compared an X-ray of Powell's lower back before the accident to an X-ray after the accident and concluded they looked the same. He noted that an MRI of Powell's neck revealed some abnormalities, but stated that they "represent abnormalities that are present for a very long period of time."

Dr. Robert Wilson, an orthopedist who examined Powell, described the accident as "very minor." He stated that "it's not impossible" the accident would have caused Powell some irritation and aggravation, but that after two to three months the treatment she received was "not going to be due to this accident." Dr. Wilson stated that a reasonable course of treatment for Powell after the accident would have included her visit to the emergency room, up to three months of physical therapy, a consultation and two or three follow up visits with a doctor, and a set of X-rays and MRIs. In his opinion, the reasonable cost of

5

such treatment was $5,362. He concluded the epidural injections Powell received were not medically necessary.

Lemus also called Dr. Henry Lubow, a physician specializing in medical forensics. Dr. Lubow testified about the reasonable value of the treatment provided by the doctor who recommended Powell receive epidural injections and the reasonable value of the injections. Powell's doctors charged $36,324 for these services, but Dr. Lubow said the reasonable value of the services was only $2,393 to $3,111. He did not give an opinion on whether the epidural injections were medically necessary.

A nine-member jury[2] unanimously awarded Powell $7,663 in damages—$4,663 for past economic expenses, $3,000 for past noneconomic damages, and nothing for future economic or noneconomic damages.[3] Powell filed a motion for a new trial on several grounds, including that the trial court erroneously permitted Dr. Burkhard to testify and that the jury's damages

---

[2]    The parties stipulated to a nine-member jury when wildfires prevented several jurors from attending after trial commenced.

[3]    Counsel for Lemus asked the jury to award Powell only $4,588.27 in past economic damages, even though Dr. Wilson stated that a reasonable course of treatment following the accident would have cost $5,362. Counsel for Lemus argued that the actual cost of Powell's initial emergency room visit was $773.73 less than the cost Dr. Wilson said was reasonable. Counsel for Powell asked the jury to award over $150,000 in future economic damages for future medical treatment. Powell does not challenge the jury's finding she was not entitled to any future economic or noneconomic damages.

award was inadequate.  The trial court denied the motion, and Powell timely appealed from the judgment.

## DISCUSSION

### A. *The Trial Court's Evidentiary Rulings Were Not an Abuse of Discretion*

Powell argues the trial court erred by permitting Dr. Burkhard to testify and by allowing Dr. Lubow to testify about the reasonable value of Powell's medical treatment, which Dr. Lubow based in part on Medicare reimbursement rates. Neither argument has merit.

#### 1. *Standard of Review*

"Except to the extent the trial court bases its ruling on a conclusion of law (which we review de novo), we review its ruling excluding or admitting expert testimony for abuse of discretion." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*); accord, *Pina v. County of Los Angeles* (2019) 38 Cal.App.5th 531, 545.)  Because "'[a]ction that transgresses the confines of the applicable principles of law is outside the scope of discretion,'" to "determine if a court abused its discretion, we must thus consider 'the legal principles and policies that should have guided the court's actions.'"  (*Sargon*, at p. 773; accord, *Pina*, at p. 545.)  "The standard is a deferential one, and an appellate court may not substitute its discretion for that of the trial court, even if it disagrees." (*San Francisco Print Media Co. v. The Hearst Corp.* (2020) 44 Cal.App.5th 952, 962.)

### 2. *The Trial Court Did Not Err in Allowing Dr. Burkhard To Testify*

"On receipt of an expert witness list from a party, any other party may take the deposition of any person on the list." (Code Civ. Proc., § 2034.410.)[4] Section 2034.300, subdivision (d), provides "the trial court shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to . . . [m]ake that expert available for a deposition . . . ." As stated, Dr. Burkhard did not appear for a deposition that counsel for Powell noticed to take place in Los Angeles. Powell argues that, if a party wants to object to the location of the deposition of an expert witness, the party must file a motion for a protective order and that, "if [the] procedures are not [followed], the court must exclude the testimony of the expert" under section 2034.300, subdivision (d). Powell is correct on the first point, but not on the second.

"The service of a proper deposition notice accompanied by the tender of the [required] expert witness fee . . . is effective to require the party employing or retaining the expert to produce the expert for the deposition." (§ 2034.460, subd. (a).)[5] Failing to make an expert witness available for a noticed deposition is a misuse of the discovery process, for which the court may impose

---

[4] Undesignated statutory references are to the Code of Civil Procedure.

[5] "If the party noticing the deposition fails to tender the expert's fee under [s]ection 2034.430, the expert shall not be deposed at that time unless the parties stipulate otherwise." (§ 2034.460, subd. (b).) Powell makes no showing she tendered Dr. Burkhard's required expert witness fee, but we assume for purposes of this appeal that she did.

sanctions. (See §§ 2023.010, subd. (d) ["Misuses of the discovery process include . . . [f]ailing to respond or to submit to an authorized method of discovery."], 2023.030 [listing the kinds of sanctions the court may impose for misuse of the discovery process].) Any party who objects to the date and time of a deposition after receiving service "may promptly move for a protective order . . . ." (§ 2025.420, subd. (a); see § 2025.420, subd. (b)(2), (4) [court may order that "the deposition be taken at a different time" or "taken at a place other than that specified in the deposition notice"].) Rather than filing a motion for a protective order, counsel for Lemus simply informed counsel for Powell that she objected to the deposition notice and that she would not produce Dr. Burkhard for the deposition on that day. Although counsel for Powell's conduct did not fully comply with the Code of Civil Procedure, any reasonable attorney would have understood that the deposition was not going forward and that the parties had a (minor) disagreement to work out. Indeed, the discovery dispute here is the kind of discovery issue counsel are generally expected to resolve informally without court intervention.

In any event, to the extent counsel for Powell's response amounted to a misuse of the discovery process, the applicable provisions of the Code did not, as Powell asserts, require the trial court to exclude Dr. Burkhard's testimony at trial. Section 2034.300 provides that the court must exclude the witness only if the party designating the expert "unreasonably fail[s]" to produce the expert for deposition. Failing to produce an expert witness for deposition a single time on the date noticed by the propounding party, based on a disagreement over the time and place of the deposition, is not an "unreasonable" failure to make

9

an expert witness available for deposition under section 2034.300.

"Although section 2034.300 does not provide explicit guidance as to how a court should decide if the party's failure was reasonable or unreasonable," courts consider "whether the conduct being evaluated will compromise [the] purposes of the discovery statutes: '"to assist the parties and the trier of fact in ascertaining the truth; to encourage settlement by educating the parties as to the strengths of their claims and defenses; to expedite and facilitate preparation and trial; to prevent delay; and to safeguard against surprise."'" (*Staub v. Kiley* (2014) 226 Cal.App.4th 1437, 1446-1447.) In addition, "[i]t is well established 'the purpose of discovery sanctions "is not 'to provide a weapon for punishment, forfeiture and the avoidance of a trial on the merits,'" . . . but to prevent abuse of the discovery process and correct the problem presented . . . .'" (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 300; see *McGinty v. Superior Court* (1994) 26 Cal.App.4th 204, 210.) "Consistent with this statement of purpose the appellate courts have held '[t]he penalty should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery.'" (*Parker*, at p. 301.) Therefore, the Code generally "'evince[s] an incremental approach to discovery sanctions, *starting* with monetary sanctions . . . .'" (*Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 604.)

Powell's contention that section 2034.300 requires the trial court to exclude an expert witness from testifying any time the party designating the expert fails to make the expert available for a noticed deposition—regardless of the party's other conduct

10

and efforts to make the witness available—is not consistent with these purposes.  When a party fails to make an expert available for deposition, the "problem presented" that requires correction is the unfairness to the other party of having to go to trial without having had an opportunity to discover the opinions of the other side's expert and the bases for those opinions.  (See *Cottini v. Enloe Medical Center* (2014) 226 Cal.App.4th 401, 416 ["The purpose of the expert witness discovery statutes is 'to give fair notice of what an expert will say at trial.'"].)  Excluding an expert witness from testifying may be appropriate where, for example, a party engages in "a comprehensive attempt to thwart the opposition from legitimate and necessary discovery."  (*Zellerino v. Brown* (1991) 235 Cal.App.3d 1097, 1117; see, e.g., *id.* at pp. 1115-1117 [trial court did not abuse its discretion in precluding expert witnesses from testifying where the designating party did not timely disclose the witnesses, did not supply the required declarations stating the substance of the witnesses' expected testimony, failed to provide a discoverable expert witness report, and "told counsel not to bother *asking* to take depositions"].)  But excluding an expert witness from testifying any time the designating party fails (once) to make the expert available for deposition at a particular (disputed) time and place would serve primarily to punish the party designating the expert witness and would not be proportional to the discovery transgression.

Counsel for Lemus did not try to prevent Powell from deposing Dr. Burkhard.  Her primary offense was insisting Dr. Burkhard's deposition take place in Orange County, close to Dr. Burkhard's office.  While counsel for Lemus's actions may have caused some delay, they did not significantly undermine the

11

purposes of the discovery statutes.  Counsel for Lemus did not "compromise [the] purposes of the discovery statutes" by trying to prevent Powell from obtaining information from Dr. Burkhard about his opinions, impede Powell's preparation for trial, or gain an unfair advantage by surprising Powell.  (See *Staub v. Kiley*, *supra*, 226 Cal.App.4th at p. 1447.)

Moreover, as the trial court correctly recognized, Powell's failure to depose Dr. Burkhard was caused at least as much (if not more) by the conduct of counsel for Powell.  "The behavior of the party seeking to exclude the expert testimony is relevant to the reasonableness inquiry" under section 2034.300.  (*Boston v. Penny Lane Centers, Inc.* (2009) 170 Cal.App.4th 936, 954; accord, *Staub v. Kiley*, *supra*, 226 Cal.App.4th at pp. 1447-1448.)  Powell had over a year to depose Dr. Burkhard after Lemus designated him as an expert.  Counsel for Powell decided to cancel Dr. Burkhard's deposition at least once during the months before trial.  And counsel for Powell made no effort to accommodate counsel for Lemus's repeated requests that Dr. Burkhard's deposition take place in Orange County or to meet the other side halfway (e.g., Norwalk, Santa Fe Springs, or Carmenita).  Counsel for Lemus offered to have counsel for Powell depose Dr. Burkhard in Orange County before March 2018 and again in June 2018, but counsel for Powell would have none of it.  He ignored counsel for Lemus and served a notice of Dr. Burkhard's deposition to take place in Los Angeles.  And on the day of Dr. Burkhard's scheduled deposition, when counsel for Lemus proposed three dates the following week that Powell could depose Dr. Burkhard in Orange County, counsel for Powell again ignored his opposing counsel.  (See *Staub*, at p. 1447 [a party may act unreasonably when it acts with "undue rigidity in responding to

12

expert scheduling issues"]; Super. Ct. L.A. County, Civ. Div. Rules, appen. 3.A(e)(2), Guidelines for Civility in Litigation ["[i]n scheduling depositions, reasonable consideration should be given to accommodating schedules [of] opposing counsel and of the deponent"].)

In addition, after Dr. Burkhard failed to appear for his deposition, counsel for Powell never noticed a new deposition (in Los Angeles County or Orange County), never filed a motion to compel the deposition, and never made any other efforts to depose Dr. Burkhard. (See *Stanchfield v. Hamer Toyota, Inc.* (1995) 37 Cal.App.4th 1495, 1503-1504 [where the defendants' expert witness stated at his deposition he was not prepared to give his complete opinions on the plaintiff's damages, but could be ready within 16 hours, the trial court did not abuse its discretion in ruling the plaintiff acted unreasonably by "fail[ing] to make reasonable arrangements to continue the deposition or seek appropriate relief before trial"].) Under these circumstances the trial court did not abuse its discretion in finding Lemus did not unreasonably fail to make Dr. Burkhard available for deposition under section 2034.300 and in allowing Dr. Burkhard to testify at trial.

3. *Powell Has Not Shown the Trial Court Erred in Admitting Dr. Lubow's Testimony*

Dr. Lubow testified about the reasonable value of the services provided by the doctor who recommended Powell receive epidural injections and the reasonable value of the injections. Dr. Lubow's opinion was based, in part, on published Medicare reimbursement rates for the medical billing codes associated with this type of treatment. Powell contends, without citing any

13

relevant authority,[6] Dr. Lubow's opinion was "inappropriate" and "unfairly lowered the range of reimbursement" because "Powell is not on Medicare and, indeed, is not even entitled to Medicare as she is not over the age of 65."

In light of Powell's failure to cite relevant authority or further develop her argument, it is not clear on what legal basis she is arguing the trial court erred in allowing Dr. Lubow to give this testimony. She appears to be arguing that Medicare reimbursement rates are never relevant to the reasonable cost of medical care received by patients who are not covered by Medicare and that Dr. Lubow's testimony was inadmissible because it was based on irrelevant evidence. (See *Sargon*, *supra*, 55 Cal.4th at p. 776 ["[t]o the extent that the expert relied on data that is not relevant to the measure of lost profit damages, the trial court acted within its discretion to exclude the testimony because it was not '[b]ased on matter . . . that is of a type that reasonably may be relied upon by an expert in forming an opinion'"].)

"[U]nder Evidence Code sections 801, subdivision (b), and 802, the trial court acts as a gatekeeper to exclude expert opinion testimony that is (1) based on matter of a type on which an expert may not reasonably rely, (2) based on reasons unsupported by the material on which the expert relies, or 3) speculative." (*Sargon*, *supra*, 55 Cal.4th at pp. 771-772.) "But courts must . . . be cautious in excluding expert testimony." (*Id.* at p. 772.) "The

---

[6] The only authority Powell cites is *Martin v. PacifiCare of California* (2011) 198 Cal.App.4th 1390, where the court held Health and Safety Code section 1371.25 "prevents a health care service plan from being held vicariously liable for a medical provider's acts or omissions." (*Id.* at p. 1393.) *Martin* has no bearing on Powell's appeal.

court must not weigh an opinion's probative value or substitute its own opinion for the expert's opinion. Rather, the court must simply determine whether the matter relied on can provide a reasonable basis for the opinion or whether that opinion is based on a leap of logic or conjecture. . . . The goal of trial court gatekeeping is simply to exclude 'clearly invalid and unreliable' expert opinion." (*Ibid.*; see *Yumori-Kaku v. City of Santa Clara* (Dec. 30, 2020, H046105, H046696) ___ Cal.App.5th ___, ___ [2020 WL 7764966, p. 21].)

"To be recoverable" as damages, "a medical expense must be both incurred *and* reasonable." (*Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 555; see *Pebley v. Santa Clara Organics, LLC* (2018) 22 Cal.App.5th 1266, 1274 ["'the measure of medical damages is the lesser of (1) the amount paid or incurred, and (2) the reasonable value of the medical services provided'"].) Dr. Lubow explained why, in his opinion, Medicare reimbursement rates were relevant to the reasonable value of the medical treatment Powell received. He testified that, "in the fee-for-service world," where medical providers are paid for services rather than as part of a health maintenance organization, there are five primary types of payers: cash payers, Medicaid, Medicare, payers in workers' compensation proceedings, and group health insurers. Dr. Lubow stated that the amount each typically pays is proportional to Medicare's published reimbursement rates. According to Dr. Lubow, Medicare "typically pay[s] 80 percent" of the reimbursement rate, whereas the "average group health plan pays about 130 percent" of the rate. He said he uses the Medicare reimbursement rate as the lower value in determining the reasonable value of services because "80 to 90 percent of the medical specialists in the Los

15

Angeles and Orange County areas" accept the Medicare reimbursement rate. Dr. Lubow presented the Medicare reimbursement rates for the medical billing codes associated with Powell's epidural injections and related treatment, as well as the average amount a group health plan pays for those billing codes. Based on this evidence, Dr. Lubow concluded the medical expenses Powell incurred were unreasonably high.

In light of Dr. Lubow's explanation of the bases of his opinions, his testimony was not "'clearly invalid and unreliable.'" (*Sargon*, *supra*, 55 Cal.4th at p. 772.) Assuming the Medicare reimbursement rates are in fact indicative of what other payers typically pay for the medical services Powell received—a proposition Powell does not challenge—those rates provide a (but not the only) reasonable basis for determining the reasonable value of her medical treatment in this case. (See *Children's Hospital Central California v. Blue Cross of California* (2014) 226 Cal.App.4th 1260, 1267, 1277-1278 [in an action by a hospital to recover the reasonable and customary value of its services, the trial court erred in excluding "the Medi-Cal and Medicare fee-for-service rates paid by the government" for the services because "[a]ll rates that are the result of contract or negotiation, including rates paid by government payors, are relevant to the determination of reasonable value"]; *Sanjiv Goel, M.D., Inc. v. Regal Medical Group, Inc.* (2017) 11 Cal.App.5th 1054, 1064-1065 [expert's testimony regarding Medicare rates was relevant to the reasonable value of a hospital's emergency medical services, even where the hospital had to accept Medicare patients].)[7]

---

[7] Powell similarly argues the trial court should not have allowed Dr. Lubow to testify about the rates typically paid in

16

Powell also argues the trial court should not have allowed Dr. Lubow to testify "on issues relating to orthopedics and radiology." Powell does not describe, however, the purported objectionable testimony, nor does she cite any evidence in the record showing Dr. Lubow offered opinions on orthopedics or radiology related to Powell's claimed injuries. (See *Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457 ["'To demonstrate error, appellant must present meaningful legal analysis supported by . . . citations to facts in the record that support the claim of error.'"].) Moreover, when giving his opinion about the reasonable value of Powell's epidural injections and related treatment, Dr. Lubow said he was not giving an opinion on whether the treatment was medically necessary, but was presuming all of Powell's treatment was both "made necessary by the accident" and "medically necessary to do."

B. *Powell Has Not Shown the Jury's Damages Award Was Legally Inadequate*

Powell argues the jury's damages award was inadequate for two reasons. First, Powell contends the jury's award was

workers' compensation proceedings. Dr. Lubow explained that, as with the rates paid by group health plans, the rates typically paid in workers' compensation proceedings are proportional to the Medicare reimbursement rates. Therefore, this argument fails for the same reasons Powell's argument about Medicare rates fails. Moreover, Dr. Lubow did not actually give an opinion about the rates typically paid in workers' compensation proceedings for the specific medical services Powell received. He simply mentioned in passing that the rates paid in workers' compensation proceedings typically fall between the Medicare reimbursement rate and the average rates paid by group health plans.

inadequate because the testimony of Dr. Burkhard and Dr. Lubow tainted the trial. As discussed, however, the trial court did not err in admitting this testimony.

Second, Powell argues the jury's award was inadequate as a matter of law because Powell incurred over $70,000 in medical bills. A trial court may vacate a verdict and order a new trial on the ground of inadequate damages if "after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision." (§ 657.)

Powell, as the plaintiff, had the burden of proving she was entitled to the damages she claimed. "'[W]here the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals,'" generally "'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838; accord*, Glovis America, Inc. v. County of Ventura* (2018) 28 Cal.App.5th 62, 71; *Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 734.) Where the plaintiff contends "the trial court committed prejudicial error in refusing to grant a new trial on the ground of inadequate damages," the reviewing court will not reverse an order denying such a new trial motion unless the damages award was "'totally unconscionable and without evidentiary justification.'" (*Ajaxo,*

*Inc. v. E\*Trade Financial Corporation* (2020) 48 Cal.App.5th 129, 192-193.)

Powell has not shown that there was uncontradicted and unimpeached evidence she was entitled to $70,000 in damages, that the evidence left no room for a contrary finding, or that the jury's award was unconscionable and unjustified by the evidence. Lemus disputed the severity of the accident and whether Powell's claimed injuries were caused by the accident. Dr. Burkhard testified Powell should not have had any injuries from the accident. Dr. Rothman testified Powell's X-rays and MRIs showed only long-term degenerative changes that occurred before the accident. Even Powell's accident reconstruction expert, Fugger, testified Powell should not have injured her lower back in the accident. Dr. Wilson testified the reasonable value of Powell's reasonably necessary medical treatment was $5,362 (which assumed an emergency-room visit cost nearly $800 more than what Powell actually incurred). Dr. Lubow testified the cost of Powell's epidural injections and related treatment (which Dr. Wilson stated were not medically necessary) were several thousand dollars more than reasonable. And Powell's orthopedist, Dr. Schiffman, testified that some of her medical bills were unreasonably high. Powell has not shown as a matter of law she was entitled to more than the $7,663 the jury awarded her.

## DISPOSITION

The judgment is affirmed.  Lemus is to recover her costs on appeal.


SEGAL, J.


We concur:



PERLUSS, P. J.



FEUER, J.