Filed 7/12/21  Slovenec v. Masson & Fatini CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LUKE SLOVENEC, | |
| Plaintiff and Appellant, | G058736 |
| v. | (Super. Ct. No. 30-2016-00879627) |
| MASSON & FATINI, LLP, et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Layne H. Melzer, Judge.  Affirmed.

Law Offices of James A. Rainboldt and James A. Rainboldt, for Plaintiff and Appellant.

Poliquin & DeGrave, Mark P. Poliquin and Jonathan A. Falcioni, for Defendants and Respondents.

\*          \*          \*

In this legal malpractice matter, plaintiff Luke Slovenec hired defendants Masson & Fatini, LLP (the law firm) and attorney Richard Masson to represent him in a marital dissolution proceeding (the divorce case).  The divorce case was heard by a private judge, and Slovenec's displeasure with the outcome led to the instant case.  The case was bifurcated.  In the first phase, a bench trial was held on the issue of whether defendants' failure to file a timely appeal resulted in any harm.  The court determined that it did not.  The second phase was to be a jury trial, but Slovenec did not, with the exception of a single issue, retain an expert to opine on the standard of care.  After briefing and argument on whether expert testimony was necessary, the court granted a nonsuit in favor of defendants.  Slovenec now appeals.

I

FACTS

A.  *The Divorce Case*

We limit our initial discussion of the divorce case to an overview, and will add additional facts, as necessary, in the discussion portion of this opinion.  Slovenec and Christina Slovenec (Christina)[1] were married in October 2006, and they had one child, born in November 2008.

Slovenec retained defendants on September 21, 2011, to represent him in his anticipated divorce proceeding.  Christina filed a petition to dissolve the marriage the next day.

In November 2011, pursuant to a stipulation by both parties, the family court issued an order granting joint legal and physical custody.  The court also set a

---

[1] We refer to Christina by her first name to avoid confusion and for the ease of the reader. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1.)

custody schedule and ordered Slovenec to pay child support of $1,043 per month and spousal support of $2,162 per month.[2]

In May 2012, defendants filed an ex parte order to show cause to modify the two support orders, among other things. In sum, Slovenec alleged his business, Skyline Document Solutions (Skyline), was no longer profitable. His income had decreased by 59 percent and he was no longer able to pay the agreed-upon support amounts. This matter was continued, but never went forward.

The case proceeded. Trial was initially set for October 30, 2012, but was continued and the case was reassigned to different judges. Christina changed counsel and ultimately retained Brian Saylin of Saylin & Swisher.

In July 2013, the parties stipulated to have all of the remaining issues determined by a private judge acting as a temporary judge. The parties agreed on retired Judge Jonathan H. Cannon of Judicial Arbitration Mediation Services (JAMS).

In December 2013, defendants substituted out of the case and Slovenec represented himself. In April 2014, defendants again took over Slovenec's representation. The same pattern repeated itself and between August 2014 and January 2015. Slovenec again represented himself before defendants substituted back in to the case.

While Slovenec was representing himself for the second time, in August 2014, he filed a motion to discontinue JAMS and return to family court. His stated grounds were that Judge Cannon was "prejudiced" against him. Ultimately, this request was denied.

The matter proceeded to trial before Judge Cannon in February 2015 on the issues of child and spousal support, division of community debts and assets,

---

[2] After trial, Slovenec filed requests to modify these amounts in November 2015 and March 2016. The family court denied both of these motions, finding that Slovenec's statements as to his income and expenses were not credible.

3

reimbursements, and attorney fees and costs.  By stipulation, the parties submitted the matter on written offers of proof, exhibits, and written arguments.  The evidence included reports by expert witnesses for each side.

Slovenec submitted evidence that his monthly income was more than $13,000 in 2011, $12,100 in 2012, and zero in 2014, after he sold his business, Skyline. Slovenec's forensic accountant, Joel Danenhauer, prepared a February 2015 cash flow analysis that attempted "to show the amount of income available for support at the time of trial."  This showed Slovenec's 2014 income at $3,404 per month, not including any proceeds from the sale of Skyline.  Earlier, however, around April 2014, as part of determining Skyline's value for the purposes of property division, Danenhauer prepared an appraisal of Skyline.  This report concluded that "reasonable compensation" to Slovenec was $175,000 a year.  After Skyline's sale, Slovenec started a new company in a new industry.

Christina had previously offered a competing business valuation through her own expert that estimated Slovenec's reasonable compensation to be $60,000 a year. Slovenec responded to this valuation in an e-mail to Christina's counsel dated February 27, 2014, stating:  "'fair compensation for officers/executives in my industry is in the neighborhood of $175,000-$200,000 per year.  [Your expert] feels that [it's] fair for an officer or executive to make $60K per year, that is what my managers make and plain sales people make more than that.  I am the CFO, COO and a Salesman.  Simply put, [your expert] missed the boat on this and any judge will be able to see that.'"

Defendants, on Slovenec's behalf, submitted a 25-page closing brief.  The brief set forth in detail which issues had been addressed by stipulation and which remained outstanding, offering legal and factual arguments on each remaining issue.

Judge Cannon issued a written interim award on April 3, 2015.  Judge Cannon found in Slovenec's favor on numerous issues and in Christina's on others.

4

Sanctions were not granted to either side, and Judge Cannon noted "[i]t's time for the Parties to stop and think about their child and quit fi[gh]ting over the past."

With respect to child support, "[b]ased upon the evidence of [Slovenec's] earning ability supplied by his own statement in emails and the report of his own financial expert the court finds that he has the ability to earn $175,000 per year. He has voluntarily decided to explore a new business which is now not able to pay him a salary but this should not be at the expense of his child." Child support was to be calculated based on 50/50 custody, with Christina's support obligation based upon her actual earnings and Slovenec's based on his earning ability of $175,000 per year. Judge Cannon declined to retroactively modify either child or spousal support, but ordered spousal support terminated as of May 1, 2015.

On April 21, Slovenec filed a notice of intent to move for a new trial.

A final order was prepared accordingly and filed on May 8, 2015. This order reflected that Slovenec was ordered to pay child support of $1,277 per month.

On August 7, defendants filed a notice of appeal of the May 8 order on Slovenec's behalf. In an unpublished decision, we dismissed the appeal as untimely. (*In re Marriage of Slovenec* (Oct. 19, 2015, G052408) [nonpub. opn.].) We concluded that the notice of intent to move for new trial filed by Slovenec on April 21, 2015, triggered the 60-day period for ruling on that motion. The motion was denied by operation of law on June 22, giving Slovenec until July 22 to appeal. The August 7 notice of appeal, therefore, was untimely.

B. *The Instant Malpractice Case*

Slovenec filed the instant case on October 6, 2016, alleging a single cause of action for legal malpractice with few facts. Slovenec's factual claims of malpractice were included in his trial brief for the jury phase of the trial. He breaks the claims down into four categories – 1) issues defendants did not address in the divorce case; 2) issues

5

which defendants did address, but did not support with evidence or citations; 3) issues where the evidence was incorrectly cited to the trial court; and 4) "[i]ssues on which Defendant stated there was 'no opposition,' based on ill[-]founded assumptions." He essentially repeats those claims here, but combines the second and third categories and adds a new category, which he calls "[p]rocedural missteps including the failure to timely file the appeal and allowing the [request for order] for support modification to go off calendar." The major issues, however, appear to be the untimely appeal and issues relating to the imputed income which led to the $1,277 per month child support order.

Defendants eventually filed a cross-complaint for breach of contract and related causes of action.

Trial was originally set for May 2018, but was continued to November 13, 2018. That date was also continued to February 19, 2019, due to the death of Masson's mother on November 8.

### 1. *Motion to Augment Expert List*

On January 16, 2019, Slovenec filed an ex parte request to specially set a motion to augment his list of experts. The stated reason for the motion was that he wished to present expert testimony from a certified family law specialist. At the time he originally designated experts, he "lacked the means to retain an expert with those credentials," but had "since then acquired the means" and had consulted with a qualified expert who was prepared to immediately provide deposition testimony. Slovenec asserted there was no timely expert designation by the defendants.

Defendants opposed the request, arguing Slovenec had not made an affirmative showing as to why he was entitled to relief, including the lack of an actual motion to augment. Defendants also noted that based on the original trial date of November 13, 2018, an issues conference had been held and discovery was closed on November 2. Further, any need to retain a certified family law specialist existed well

6

before the initial trial date, and Slovenec had made no showing that he had tried but failed to retain such an expert.

The court granted the motion to specially set the motion to augment and set it for January 31. Slovenec's motion again claimed defendants had not complied with the expert witness designation statutes, arguing an August 31, 2018, letter from defendants to Slovenec's counsel was insufficient to meet the strict requirements of Code of Civil Procedure section 2034.230.[3] The demand was insufficient, Slovenec claimed, because the letter "fails to state the entire title of the case, does not explicitly state the identity of the party making the demand; and miscalculates the date on which the exchange was due." While the letter stated the designation was due on September 24, 2018, given the five additional days allowed for mailing, it was due on September 25. Slovenec's counsel's declaration, however, noted that the original expert exchange, based on the first trial date, had been set for March 2018.

Defendants opposed, arguing the August 31, 2018 letter was only a reminder of Slovenec's obligations, and the initial expert demand had been sent in February 2018, before the first trial date, with a March exchange date. When the first date was continued, all statutory deadlines were continued to correspond to the new date. Defendants claimed this initial demand was timely and therefore no timeliness issue existed. With respect to their own designation, defendants argued they substantially complied and the lack of a daily fee should not be determinative. Meanwhile, they contended Slovenec's own 2018 designation had failed to comply because it did not include an attorney declaration.

The court issued a detailed tentative ruling which set forth its rationale for denying the motion. The court noted that Slovenec's new designation would substitute one legal malpractice expert for another. Slovenec had the burden to show he failed to

---

[3] All further undesignated statutory references are to the Code of Civil Procedure.

include the expert through mistake, inadvertence, surprise, or excusable neglect, citing section 2034.620, subdivision (c). The court stated that Slovenec "has not met his burden. [Slovenec] does not argue 'mistake, inadvertence, surprise or excusable neglect.' Further, even if he had, choosing one expert over another on the same topic of testimony fits none of those categories." Further, allowing Slovenec to augment his list for financial reasons "creates a slippery slope and disregards the requirement of 'mistake, inadvertence, surprise or excusable neglect' that is required by statute. Further, it ignores the requirement for a simultaneous exchange of experts." Finally, the court noted, the defendants "have shown prejudice. Defendant's own expert is also not a family law specialist. Further both experts have already been deposed."

### 2. Phase I

Trial began on April 2, 2019. Prior to trial, the parties stipulated to bifurcate the matter. Phase I was a bench trial set to address the sole issue of whether this court would have reversed the order if Slovenec's appeal had been timely. Phase II was set for jury trial on the remaining issues.

In Phase I, the court heard testimony from the parties and argument by counsel. The court then wrote a lengthy tentative ruling explaining why substantial evidence supported Judge Cannon's decisions in the divorce case. This included the decision to impute an earning capacity of $175,000 a year to Slovenec. Further, the court found Judge Cannon's exercise of discretion was reasonable.

We only quote a few portions of this extremely thorough and well-reasoned tentative here, which became the final order. The court highlighted the February 2014 e-mail Slovenec sent discussing Christina's competing valuation of his business, in which he stated the range for his own compensation should be $175,000 to $200,000 a year. Judge Cannon also found this e-mail important.

8

The court noted: "This was written by [Slovenec] in 2/2014 approximately a year before trial and during a time when he was submitting income and expense declarations suggesting he was making only approximately $79,000—at least by way of verifiable 'w-2' or 'dividend' distributions. . . . It is possible [Slovenec]'s email is merely an academic commentary on what figures an appraiser might use to evaluate net operating income for purposes of discerning a value through a multiple of earnings approach; but it is phrased in a way that suggests something less than a purely academic offering—he is providing commentary on what people in his company 'make' and contrasting his elevated position within the company while asserting that 'fair compensation' is '$175K-$200K' per year."

After discussing other evidence, the court concluded: "Put simply, there was substantial evidence to support the conclusion that [Slovenec] voluntarily relinquished his ability to earn at a level commensurate with his 'reasonable' income by selling [his business]. A parent does not have the right to divest himself of his earning ability in an existing career at the expense of his children. [Citations.] In those circumstances where a parent/spouse voluntarily inhibits his own earning capacity by leaving his job or by selling his business, the law permits a Court to then impute income at the previous level without necessarily finding 'ability' and 'opportunity.'"

Slovenec objected to the Phase I tentative, and the court determined those objections were without merit. The tentative decision became final. In sum, the court found for defendants on Phase I, concluding that the untimely appeal ultimately did not matter, as this court would have affirmed Judge Cannon's order.

### 3. Phase II

Phase II of the trial was set to begin in October. In preparation, the court conducted a hearing under Evidence Code section 402 to determine preliminary facts relevant to the admission of Slovenec's proffered evidence of malpractice. Prior to this

9

hearing, the court ordered the parties to file a joint report regarding how the evidence would be presented on Slovenec's claims.

This weighty tome was approximately 239 pages. Slovenec set forth the claims he was prepared to prove and identified the evidence that supported it. Defendants repeatedly pointed out the lack of expert testimony to support Slovenec's contentions.[4] This was not the first time defendants had raised the issue of expert testimony being required to support Slovenec's claims. Defendants had discussed this in a trial brief in May 2019. At that time, they noted that Slovenec's expert, Adrian Woodward, had raised several issues regarding defendants' conduct of the divorce case, but he had not testified that defendants' "conduct was inconsistent with what other attorneys in the community would have done under similar circumstances in the exercise of reasonable care. Specifically, while Mr. Woodward argued Defendants' conduct fell below the applicable standard of care, he never testified as to the prevailing conduct he expected from other attorneys in the community under similar circumstances. Further, Mr. Woodward's opinions primarily were based on how he would have dealt with the situation. This testimony, however, is insufficient to establish the applicable standard of care."

In September 2019, Slovenec submitted a brief that argued expert testimony is not always required. He stated: "The only issue on which expert testimony may be required in the present case, concerns the *standard of care* on a single claimed failure, i.e., the omission of evidence concerning [Slovenec]'s earning prospects related to the imputed earning capacity. . . . Most of the *standard of care* issues in this case do not require the assistance of an expert."

That same month, defendants filed a motion in limine to request an Evidence Code section 402 hearing as to the necessity of expert opinion. They also filed

---

[4] Defendants also pointed out that issues relating to imputed income were necessarily decided by the Phase I ruling, and Slovenec raised those issues in that context.

10

a motion in limine requesting that Woodward's testimony be limited to the opinions stated at the time of his deposition.

On his brief regarding the conduct of Phase II, Slovenec again stated that expert opinion was unnecessary on the standard of care. Defendants again briefed this issue. All of this briefing on the issue of expert testimony took place before the Evidence Code section 402 hearing.

That hearing went forward in October 2019. The court considered the "extensive offers of proof" and "substantial briefing" prepared by the parties. The purpose of Phase II was to address the other acts or omissions apart from the failure to file a timely appeal.

The threshold issue, the court noted, was whether expert testimony was required for some or all of the acts or omissions that Slovenec claimed constituted malpractice. The only issue where Slovenec was prepared to offer expert testimony was whether defendants committed malpractice in connection with the imputed income issue decided by Judge Cannon.

The court ruled that because "family law is a specialty practice and, further, because the determination of whether defendants' conduct, in isolation or total, fell below the standard of care, . . . [is] beyond the common understanding of a lay jury, . . . [Slovenec]'s claims must be supported by expert testimony." The court therefore restricted the evidence to the claim upon which expert testimony was offered.

Defendants argued that any further determination on the imputed income issue was barred by the court's Phase I ruling, which held Judge Cannon's decisions were proper and would have been upheld on appeal. Slovenec argued that defendants should have prevented some negative evidence from being introduced, which would have disputed the factors set forth in *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367.

But, the court noted, Christina did not address these factors in the family court proceeding, nor did Judge Cannon use this theory to impute income. Rather, Judge

11

Cannon relied upon voluntary disablement. Thus, "the only admissible evidence relating to the singular act of malpractice to be supported by expert testimony in this case is either irrelevant or . . . failed to establish injury to a legal certainty." The court found "nothing left of [Slovenec's] malpractice case."

The court indicated it was prepared to treat the briefing and offers of proof as sufficient to support a grant of nonsuit, and heard argument from the parties. Afterward, the court confirmed its tentative decision to grant nonsuit in defendants' favor. Defendants dismissed their cross-complaint without prejudice. Slovenec now appeals.

II

DISCUSSION

We must begin by noting that the vast majority of Slovenec's briefing does not seek to address the issues pertinent to this appeal, but to rehash the entirety of the divorce case. Most of this material is simply irrelevant, and we therefore decline Slovenec's invitation to dive into the weeds and relitigate the divorce case. It is simply not our role to do so.

We address only the issues relevant and properly raised and briefed in the legal malpractice appeal: 1) Procedural issues, such as the adequacy of the statement(s) of decision and whether the trial court appropriately denied Slovenec's motion to designate an additional expert; 2) Whether the trial court's Phase I decision that an appellate court would have upheld Judge Cannon's decision was properly decided under the relevant legal standard; and 3) Whether the trial court properly granted nonsuit in defendants' favor in Phase II because of Slovenec's lack of proffered expert testimony.

12

*1. Procedural Issues*

*a. Adequacy of the Statement(s) of Decision*

Slovenec apparently finds either the statement of decision originally issued by Judge Cannon and/or the trial court's Phase I statement of decision insufficient. He offers boilerplate language about statements of decision, but no specifics as to how or why they are inadequate, merely referencing the objections made in the original proceedings.

It is, obviously, far too late to register any objections to Judge Cannon's statement of decision, and we shall not consider any argument with respect to it.

To the extent Slovenec objects to the trial court's Phase I statement of decision, he offers no legal argument, and the point is deemed waived. (*Schubert v. Reynolds* (2002) 95 Cal.App.4th 100, 108-109.) If his reference to the objection in the trial court is an attempt to incorporate arguments made below by reference, that is not permitted either. (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 690, fn.18.) Moreover, the objection Slovenec points to reflects disagreement about the merits of the decision, not the form of the statement of decision itself.

Even if the issue were properly raised with respect to the Phase I statement of decision, we would find it more than adequate. Statements of decision are governed by section 632, which provides, in relevant part: "The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial."

The trial court wrote a 13-page tentative statement of decision that later became final. The statement of decision clearly sets forth the facts and legal principles upon which the court based its ruling. It is detailed, it is thorough, and it far exceeds the statutory requirements. Even if Slovenec had properly preserved and raised this issue, we would find no error.

13

### b. Augmentation of Slovenec's Expert List

Slovenec also argues the trial court erred by not permitting him to add an additional expert witness almost a year after the initial exchange had been set and less than five weeks before the trial date. We review the trial court's exercise of discretion on a discovery motion for abuse of that discretion. "The abuse of discretion standard has been described generally in these terms: 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' [Citation.] Under the abuse of discretion standard, '[w]here there is a [legal] basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court.'" (*People ex rel. Harris v. Sarpas* (2014) 225 Cal.App.4th 1539, 1552.)

Slovenec contends that "[e]xclusion of an expert's testimony on the basis of non-compliance with [section] 2034.010 et. seq. is appropriate only where the complaining party has **strictly complied** with the expert exchange statutes." He then goes on to claim defendants' August 2018 letter (not their original expert demand with the exchange set for March 2018) was defective, as was defendants' own expert designation, essentially repeating the arguments he made in the trial court. He concludes by stating that defendants "lack standing" to object to the testimony of their expert.

The problem with this argument is that it completely ignores what the trial court did and its reasoning. This was not an objection to expert testimony, it was a motion to augment Slovenec's expert witness list on the eve of trial. The case he cites, *Staub v. Kiley* (2014) 226 Cal.App.4th 1437, 1442 (*Staub*), did not address a similar motion, but an expert designation that was approximately nine days late. The defendant sought exclusion of the expert based on the untimely disclosure, which the court granted, and which led to nonsuit in the defendants' favor. (*Id.* at p. 1443.)

Conducting a de novo review because the issue concerned statutory interpretation, the appellate court considered the language of section 2034.300. (*Staub, supra*, 226 Cal.App.4th at pp. 1445-1446.) That section states that "'on objection of any

14

party who has made a complete and timely compliance with Section 2034.260[5] . . . , the trial court shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to,'" among other things, designate their expert witnesses. The court strictly construed the "'complete and timely compliance'" requirement, and in doing so concluded that the date of the defendants' original exchange demand was early because it did not include the required five days for mailing. (*Ibid*.) Accordingly, the defendants lacked standing under section 2034.300 to object to the testimony of the plaintiff's expert. (*Id.* at p. 1446.)

Slovenec's motion, however, was not about compliance with the original expert designation or opposing a motion to exclude expert testimony, it was about augmenting his own expert witness list. While the court in *Staub* interpreted section 2034.300, motions to augment expert witness lists are governed by sections 2034.610 and 2034.620, which set forth their own requirements.

Section 2034.620 details those requirements: "The court shall grant leave to augment or amend an expert witness list or declaration *only if all of the following conditions are satisfied*: [¶] (a) The court has taken into account the extent to which the opposing party has relied on the list of expert witnesses. [¶] (b) The court has determined that any party opposing the motion will not be prejudiced in maintaining that party's action or defense on the merits. [¶] (c) The court has determined either of the following: [¶] (1) The moving party would not in the exercise of reasonable diligence have determined to call that expert witness or have decided to offer the different or additional testimony of that expert witness. [¶] (2) The moving party failed to determine to call that expert witness, or to offer the different or additional testimony of that expert witness as a result of mistake, inadvertence, surprise, or excusable neglect . . . ." (Italics added.)

---

[5] Section 2034.260 sets forth the method of exchange of expert witness information, the contents of the declaration, and similar matters.

15

This statute, unlike section 2034.300, does not limit objections to parties who completely and timely complied with the expert designation statute. Rather, it is the party seeking to augment its expert witness list that must comply with section 2034.620's requirements.

The trial court recognized this. First addressing the conditions in section 2034.300, subdivision (c), the trial court noted that with respect to reasonable diligence, "[Slovenec] wants to substitute an expert and thus he certainly was expected to call an expert like [the family law specialist Slovenec wished to designate] at the time of the original exchange." We agree. The issues in this case have been apparent from the beginning, including the obvious fact that the underlying case concerned family law. Slovenec, or his counsel, knew family law specialists existed; indeed, he acknowledged as much in his motion by stating the reason he originally did not retain one was financial. But he made no showing that he had tried and failed to retain a family law specialist for a fee he could afford. Accordingly, we find the court did not err with respect to finding this condition did not exist.

The same is true as to the court's finding on the issue of mistake, inadvertence, surprise, or excusable neglect. Slovenec did not even argue in his moving papers that one of these conditions existed. The fact that his papers reflected a choice not to retain a family law specialist at the time of his original designation belies any argument that these conditions were present – his decision, whether based on financial or other reasons, was intentional and deliberate. Thus, the court did not err in finding this condition was not satisfied. As the trial court noted, the party moving to augment was statutorily required to show that either of the conditions in section 2034.300, subdivision (c), were present as a prerequisite of granting the motion. Accordingly, we find no error.

16

### 2. *Phase I Decision*

In Phase I of the legal malpractice case, the trial court reached a decision on the merits that an appellate court would have affirmed Judge Cannon's orders, and therefore found that although Slovenec suffered no damages as a result of defendants' error. This was entirely proper. "[T]he mere breach of the standard of care does not give rise to a cause of action for malpractice. [Citation.] '[U]ntil the client suffers appreciable harm as a consequence of his [or her] attorney's negligence, the client cannot establish a cause of action for malpractice.'" (*Dawson v. Toledano* (2003) 109 Cal.App.4th 387, 397.)

Slovenec states that we should apply different standards of review based on the particular details of the issues the court was deciding, for example, "***De novo*** review is the standard for interpreting [California] Rule[s] of Court[, rule] 5.260(a)(3) as it concerns the timeliness of [Slovenec's] email . . . and expert's report . . . for purposes of setting support orders."

Slovenec is mistaken. If there were any pure issues of law to be decided, the de novo standard would apply; there are not. The question is whether there was substantial evidence to uphold the trial court's decision that an appellate court would have affirmed Judge Cannon's orders. Despite the fact that Slovenec devotes most of his briefing to retrying the divorce case, we are not here to undertake that task. We are here only to review whether the trial court had substantial evidence on which to base its ruling.

In reviewing for substantial evidence, "[w]e view the evidence most favorably to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. [Citation.] Substantial evidence is evidence of ponderable legal significance, reasonable, credible and of solid value." (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1100.) "The ultimate determination is whether a *reasonable* trier of fact could have found for the respondent

17

based on the *whole* record." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1632-1633.)

Judge Cannon's support and custody orders would have been subject to review by an appellate court for substantial evidence of the factual findings and abuse of discretion as to his rulings. An abuse of discretion occurs where "the trial court exceeded the bounds of reason" (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479) or "'where no reasonable basis for the [trial court's] action is shown.'" (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.) Thus, at times, we are applying a fairly deferential standard of review, substantial evidence, on top of a *very* deferential standard of review, abuse of discretion. The high bar that Slovenec must clear to show error is obvious.

The primary point of contention from the divorce case was whether Judge Cannon properly concluded that Slovenec had the ability to earn $175,000 a year. The trial court reviewed the evidence Judge Cannon had considered. The statement of decision noted: "The issue in Phase I is not whether this Court might have reached a different conclusion than Judge Cannon. Rather it is whether there is any substantial evidence to support the conclusion he reached. . . . [¶] Judge Cannon's factual findings are supported by substantial evidence and his exercise of discretion was reasonable. As much as [Slovenec] wishes to minimize the significance of his expert's valuation of his business and his email colloquy regarding the conclusions of Christina's competing expert this evidence is important. Mr. Danenhauer's conclusion that 'reasonable compensation' for [Slovenec] in the context of his ongoing business is $175,000 could be read as a conclusion that similar business without regard to shareholder or partner distributions pay professionals with [Slovenec]'s background and experience $175,000. While this figure is apparently drawn from certain industry publications and is certainly not what was reported in the company's books that is not to say that [Slovenec] did not make something equal to or approaching that reasonable compensation of $175,000."

18

The court continued: "It is common in small businesses for total compensation to be a function of [perquisites] and shareholder or partner distributions. There were several categories in the accompanying cash flow report that highlighted areas amenable to income-like distributions (e.g., car allowances, health insurance, advertising/promotion, dues, telephone, company loans, entertainment etc.). Such distributions often have a greater value to the recipient because they are pre-tax and may never be taxable if not separately accounted for as income to the employee/owner. There were also consistent shareholder distributions as [Slovenec]'s income and expense statements highlight (see [evidence regarding] income and expense declaration showing $6,900 in shareholder distributions in addition to $5,200 'salary' approximating $145,000 income without accounting for 'hidden' income such as perquisites). Schedules generated by Mr. Danenhauer also show significant 'retained earnings' that do not appear to have been paid out entirely to shareholders. Such retained earnings could be income to the owners but for a decision to refrain from making a distribution." (Citations omitted.)

In this context, the court found Slovenec's e-mail to Christina's counsel that fair compensation for someone like him is $175,000 to $200,000 a year "could be viewed as telling." Slovenec wrote this statement approximately a year before trial, when he was submitting income and expense declarations stating he was earning approximately $79,000 a year in what the court termed "verifiable" income. "It is possible [Slovenec]'s email is merely an academic commentary on what figures an appraiser might use to evaluate net operating income for purposes of discerning a value through a multiple of earnings approach; but it is phrased in a way that suggests something less than a purely academic offering—he is providing commentary on what people in his company 'make' and contrasting his elevated position within the company while asserting that 'fair compensation' is '$175K-$200K' per year."

While evaluating "the 'true' compensation" of the owners and officers of a small business like Skyline was "notoriously difficult," the court stated, "here

19

[Slovenec]'s commentary could be seen as a 'view behind the veil' indicating that his actual compensation 'all in' (salary, shareholder distributions, perquisites etc.) is precisely in the range that Judge Cannon selected. This is not to say there are no other inferences that could have been drawn—even equally reasonable ones—but this Court's charge is to indulge all reasonable inferences in favor of affirming the judgment and substantial evidence supports this conclusion." (Fn. omitted.)

Other evidence of Slovenec's income before Judge Cannon included Christina's testimony that he earned approximately $17,000 a month during the marriage and $13,783 per month after separation. She also testified, without objection, that Slovenec declared on a vehicle loan application that his income was $20,000 per month.

The trial court did not dispute that Slovenec's income was reduced after the sale of Skyline, but noted that Judge Cannon did not assess Slovenec's actual income, but his earning capacity. Slovenec was "presented as a successful entrepreneur who built a profitable copy and digital production company. He was the CFO, COO a sales representative and an active 30% owner. The company generated over $6 [million] in revenues over a relatively short five-year span. He had the expertise necessary to run a small business or a division within a larger business. Indeed, after selling [Skyline], [Slovenec] started a new company in a new industry."

Judge Cannon's decision, the trial court noted, "highlights his view that by selling the business [Slovenec] voluntarily disabled himself from continuing to earn this income to the determent of his ability to pay child support—and ultimately to the determent of his child. [Slovenec] complains that the economics of the business forced him to sell and that he could not resist the other shareholders even if he wanted to given the control structure. But there was substantial evidence which would allow Judge Cannon to conclude otherwise." While Slovenec blamed a draconian noncompete clause in the sales contract as the reason he could no longer earn his previous income, the court noted that he was not forced to sign that, or any, noncompete, or to complete the sale if

20

the noncompete was a non-negotiable condition. Rather, "he chose to disable himself from doing that which he had done successfully for at least five years—a job for which 'reasonable' or 'fair' compensation was between $175,000 and $200,000. [Slovenec] was under no compulsion to sell or to disable himself from doing what he had done so well for so many years."

In sum, the trial court concluded there was substantial evidence to support Judge Cannon's factual finding that Slovenec voluntarily disabled himself from earning at a level commensurate with his capabilities.

Slovenec argues the trial court indulged in speculation in reaching this finding, but we strongly disagree. In doing so, he attempts to cherry-pick individual pieces of evidence to claim they do not amount to substantial evidence, but he fails to look at the entire picture. And he fails entirely to argue with the relevant standard of review in mind, rather, he attempts to retry the case. The evidence supporting Judge Cannon's decision, as well as the trial court's, was more than substantial. There was a factual basis for the amount imputed, based on Slovenec's own statements, his earnings history, and his capabilities.

The rest of Slovenec's arguments with respect to Phase I may be addressed quickly. He asserts, in a one paragraph argument, that because the income imputed to Slovenec was so "grossly in excess of his current earnings" that it "would drive many parents to despair and could make them either physically or emotionally unavailable to their child." There is no evidence to support the contention that Slovenec is or was one of these hypothetical "many parents," and indeed, Slovenec does not even argue that he is. Judge Cannon stated Slovenec's voluntary new business venture "should not be at the expense of his child," and that he had the "ability to earn $175,000 per year." The trial court noted "Judge Cannon does at least implicitly confirm that imputing income to [Slovenec] was in the best interests of the child by finding that not doing so would come 'at the expense of his child.'" Further, there was "substantial evidence to support the

21

finding that basing child support on [Slovenec]'s 'earning capacity' met the 'best interests' standard." We agree. This is a reasonable finding based on the whole of the circumstances.

Slovenec also argues that defendants, during the proceeding before Judge Cannon, should have objected to the e-mail in which he stated fair compensation for someone like him is $175,000 to $200,000 a year and to Danenhauer's April 2014 report.[6] With respect to the e-mail, defendants did object, based on "lack of foundation, conclusion, hearsay, speculation, document speaks for itself, misstates the document in question." (Capitalization omitted.) Slovenec claims defendants should have objected on grounds of relevance and that conclusions drawn were speculative. Slovenec offers no legal argument on these points and therefore any argument is waived, but even if it were not, we would find neither objection would have mattered. First, the e-mail certainly was relevant as Slovenec's own candid estimation of his income range. Second, "conclusions to be drawn from it are *speculative*" is not an appropriate or recognized objection.

As to Danenhauer's report, Slovenec contends the same objections should have been raised. Again, he offers no legal argument, and again, we find this contention waived. Even had it not been, it would not have been an abuse of discretion to find the report relevant and admissible.

### 3. Phase II Nonsuit

As discussed above, after reviewing "extensive offers of proof" and "substantial briefing" prepared by the parties, the court determined that the remaining incidents of alleged malpractice required expert testimony. The court treated the briefing

---

[6] Because of the placement of this argument in Slovenec's brief, it is somewhat difficult to tell whether this argument was intended as part of the Phase I or Phase II discussion. The ultimate result, however, is the same either way. As part of Phase II, these issues would have required expert testimony to explain the alleged errors and their claimed import.

and offers of proof as evidence sufficient to support a grant of nonsuit in defendants' favor.

A defendant is only entitled to a nonsuit if the trial court determines the evidence presented by plaintiff is insufficient to permit a jury to find in his or her favor as a matter of law. (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291.) "The function of [the nonsuit and related motions] is to prevent the moving defendant from the necessity of undergoing any further exposure to legal liability when there is insufficient evidence for an adverse verdict." (*Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743, 750.)

On appeal, "[w]e independently review the ruling on a motion for nonsuit, guided by the same rules that govern the trial court." (*Pinero v. Specialty Restaurants Corp.* (2005) 130 Cal.App.4th 635, 639.)

As best as we can discern from Slovenec's somewhat creatively organized briefs, those alleged incidents of malpractice included: failing to present facts and evidence regarding Slovenec's community interest in the couple's Brea property; failing to properly provide and/or cite evidence; failing to challenge certain "ill[-]founded assumptions" (capitalization & boldfacing omitted); and allowing a Request for Order to Modify Support orders to go off calendar.

The issue before us is whether the trial court correctly decided these issues or if they required expert testimony, the lack of which would leave Slovenec without sufficient evidence to present to the jury. "The general rule is that expert evidence is required to establish legal malpractice." (*O'Shea v. Lindenberg* (2021) 64 Cal.App.5th 228, 236-237.) While there are certain exceptions, such as the rare case of utterly egregious and obvious malpractice, those exceptions do not apply here. (*Ibid.*)

Citing general principles of expert testimony, Slovenec argues expert testimony was not required for most, if not all, of the alleged incidents of malpractice at issue here. He claims this case was without "esoteric legal phrases to explain, or

23

practices unique to legal professionals, or other technicalities at issue in this case" and offers numerous analogies to commonplace tasks such as understanding "the probable consequence of failing to submit the proper forms or supporting documentation when applying for a loan or admission to college," but this vastly oversimplifies matters.

There was nothing simple about the divorce case by the time it reached trial, and it was essential that a jury understand the context of the lawyer's role in discussing the standard of care. Indeed, Slovenec's claim on appeal that this case was simple is belied by his late attempt to augment his experts with a family law specialist. Why would such an expert be required if no experts at all were needed?

As the trial court noted: "We're dealing with complicated family law property and income issues, some of which become maybe mundane and require basic math skills, but all of which are intertwined as there is one, call it, marital estate. And that needs to be allocated and divided and in connection with decisions, tactical and otherwise. Sometimes there are rational reasons for not pursuing a claim or an item because of where it might lead and the downside of highlighting issues. [¶] There are innumerable circumstances in which decisions and tactics are made that lead to the presentation or decision not to present evidence or the decision to object to an item of evidence or forgo an objection even if such objection could be rightfully made." We agree; this case was not about a single incident of failing to submit a document or to present a single witness. The divorce case had an entire context, and without an expert to explain that context, the jury would have been without the guidance needed to decide what conduct, if any, fell below the standard of care.

While offering numerous examples of cases outside the legal malpractice context where no expert was needed (and are therefore unhelpful here), the cases Slovenec cites within that context are largely off point as well. For example, he cites *Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1094-1095, a case where the attorney failed to undertake even basic legal research. There, the malpractice was sufficiently

24

evident as to not require expert testimony. The claims here are simply not similarly obvious or egregious.

In *O'Shea v. Lindenberg*, *supra*, 64 Cal.App.5th 228, this court recently noted that *Stanley v. Richmond*, *supra*, 35 Cal.App.4th 1070, and similar cases of egregious malpractice "demonstrate a high standard for legal malpractice matters that may bypass the need for expert testimony on the standard of care. This exception only applies to malpractice that is 'so clear' as to be unmistakable, or obvious malpractice resulting from an utter failure to undertake 'basic research.'" (*O'Shea*, at p. 238.)

Slovenec asserts that case law and statutory authority, as well as treatises, are sufficient substitutes for expert testimony. They are not, and general principles would be insufficient to guide the jury in this case. Again, the cases Slovenec relies on are unhelpful or not on point.[7]

We find no error in the trial court's conclusion that expert testimony on the standard of care was required in this matter. Given the complexity of the divorce case, such testimony was essential to establish Slovenec's legal malpractice cause of action. Without an expert prepared to testify on the standard of care, his case simply could not proceed.

---

[7] The only exception is *Stanley v. Richmond*, *supra*, 35 Cal.App.4th 1070, which as we have already explained, constitutes an exception to the rule because of the obvious and clear nature of the alleged malpractice.

### III

### DISPOSITION

The judgment is affirmed.  Defendants are entitled to their costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


THOMPSON, J.


GOETHALS, J.